**Walter HILL, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. Civ–89–1563C.

United States District Court, W.D. New York.

Aug. 15, 1991.

---

Erie County Dept. of Social Services (Michael J. Fitzgerald, of counsel), Buffalo, N.Y., for plaintiff.

Dennis C. Vacco, U.S. Atty. (Denise E. O'Donnell, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

This action is brought under 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health and Human Services [the Secretary] finding claimant "not disabled" under the Social Security Act [the Act] and denying him Supplementary Security Income [SSI]. Currently pending is defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant seeks reversal of the Secretary's decision, claiming it is not supported by substantial evidence.

## BACKGROUND

Claimant Walter Hill is a Tuscarora Indian born in Oshewken, Ontario. He was 3 months and 2 days shy of age 55, which is classified as advanced age, on the day of the April 12, 1989, hearing. He has not engaged in substantial gainful activity since May 20, 1988, at which time he filed for SSI benefits alleging a back problem dating back to 1980, arthritis, and asthma (Item 5, pp. 56, 89). His application was denied initially and upon reconsideration. *Id.*, pp. 60–62, 70–72. Upon request, plaintiff was granted a *de novo* hearing before an Administrative Law Judge [ALJ] on April 12, 1989, where he testified and was represented by Richard Ippolito, Esq. *Id.*, pp. 21–55. The ALJ found· plaintiff not disabled in her decision of July 27, 1989, and this was upheld as the Secretary's final decision when the Appeals Council denied plaintiff's request for further review. *Id.*, pp. 2–3. This action was filed in district court on December 4, 1989 (Item 1).

## FACTS

### A. *Medical Evidence*

The medical evidence includes three reports, two of which overlap in time. First is the Erie County Health Department [ECHD]/Jesse Nash Family Health Center report dated November 21, 1988, covering the time from October 7, 1987 to November 27, 1988. Next is a November 28, 1988, report from Buffalo General covering the time period November 12, 1987 to November 17, 1988, and including notations by Drs. Mayo, Phillips and Berens. Finally, there is Dr. Friedland's report of December 28, 1988, which refers to the radiology report of Dr. Favorito. Claimant also testified at the hearing.

The record shows claimant was first seen at the ECHD on October 7, 1987, complaining of intermittent back pains which had persisted for the last five years but had been particularly problematic during the previous week. Essentially, he sought pain killers for this condition, specifically Tylenol with codeine which he had used for the

last several years under a prescription provided by his doctor in Canada. Claimant requested and was given physical and neurological examinations at ECHD, which proved negative and attested to his excellent health (Item 5, pp. 89–90). ECHD scheduled an appointment for claimant at Buffalo General's Orthopedic Clinic on November 12, 1987, and December 3, 1987, which he missed. During claimant's routine visit on December 21, 1987, he complained of worsening back pain. ECHD rescheduled his appointment at the Orthopedic Clinic for January 18, 1988, specifically suggesting a back brace and physical therapy. At ECHD he also received additional medication for his asthma/emphysema and arthritis condition. *Id.*, pp. 90–91, 107.

Claimant next made an informal visit to ECHD on December 30, 1987, where a back brace was discussed again. On February 2, 1988, he made another routine visit to ECHD, where tests results were discussed and his prescriptions were refilled. The record shows his final visit to ECHD was on November 27, 1988, where claimant's persistent back pain was noted. He was directed to continue treatment at Buffalo General Hospital's [Buffalo General] Orthopedic Clinic, his medical prescription was renewed, and he was instructed to return for a routine visit in three months. *Id.*, pp. 92–93. A final report dated December 9, 1988, diagnosed degenerative lumbar spine with a poor prognosis, and recommended Motrin medication. *Id.*, p. 115.

After his first visit to ECHD in October 1987, claimant was referred to Buffalo General for treatment of his back pain. *Id.*, p. 101. He was examined at the Orthopedic Clinic on November 12, 1987, by Dr. Elbert W. Phillips, who found minimal osteophytosis at L3–L4 and L4–L5 as well as degenerative disc disease at L4–L5 and possible L5–S1. *Id.*, pp. 110–111. Claimant

had toe/heel walking difficulty. Dr. Phillips prescribed Ventolin for claimant's asthma/emphysema condition. *Id.*, pp. 91, 94.

On December 12, 1988, Dr. David L. Berens diagnosed degenerative arthritis of the lowest zygapophyseal and possible degenerative disc disease, but there was little if any internal change when compared with examinations conducted on November 12 and 18, 1988. *Id.*, p. 103.

Finally, claimant was examined once by Dr. Elmer Friedland, who reported his findings on December 28, 1988. Dr. Friedland diagnosed claimant to have moderate osteoarthritis of the lumbar spine, symptomatic with 40 percent limitations of motions and pulmonary emphysema,[1] with mild impairment of ventilation. Dr. Friedland also found claimant to be 25 pounds underweight. Still, he generally found claimant in good health and able to lift 40 pounds and to take care of all of his needs. *Id.*, pp. 122–125.

Dr. Friedland referred to the radiology report made by Dr. Alfredo Favorito of the Delaware Radiological Center in Buffalo. Dr. Favorito's examination concluded claimant's condition showed moderate changes of the lower lumbar spondylosis consistent with degenerative disc disease. *Id.*, p. 126. He reported claimant had increased bone density within the body which could be from either an old trauma or localized changes of Paget's[2] disease. *Id.*, p. 116.

## B. Education and Work History

Claimant was born October 29, 1934 and was 54 years, 8 months, and 28 days at the time of the April 12, 1989, hearing. Educationally, he reached 12th-grade standing in Canada through an equivalency diploma. He is a veteran, having served in the military from 1957–1960. *Id.*, p. 122. Following his discharge, he went to school for welding in 1960. His testimony at the

---

1. Dr. Friedland had ventilation tests done at Millard Fillmore Hospital (Item 5, pp. 118–21). Essentially, the report found claimant to have mild airway obstruction less than half of that expected. Use of a bronchodilator spray permitted increased forced vital capacity without

really decreasing the airway obstruction at all. *Id.*, p. 118.

2. Paget's disease is an eczematous inflammatory precancerous condition of the nipple and areola or rarely of other cutaneous areas. *Webster's Third International Dictionary*, 1968.

hearing indicates he worked back and forth across the Canadian/United States border, mainly as a welder but most recently as a farm laborer harvesting crops. *Id.*, pp. 24–26.

At the hearing, he recounted his most recent employment history as follows. He was employed as a welder at a business located on Bailey and Clinton streets in Buffalo, New York, from February 16 to July 10, 1977. He then worked as a welder for National Steel Car in Hamilton, Ontario, Canada, from January 1978 through October 1979. From January 1, 1980 to July 16, 1987, he was employed as a foreman at Nash Farms in Hamilton, Ontario, Canada. He then worked from July 15 to November 7, 1987, as a farm laborer picking apples at Silsby Brothers Fruit Farms in Gasport, New York. *Id.* p. 132.

Claimant explained he was unable to collect unemployment for a long stretch of time because he was paid cash and did not participate in the social security system.

## DISCUSSION

Upon a complaint for review of the Secretary's final decision, relevant inquiry is limited to determining whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g) and § 1383(c); *Richard v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Secretary has moved for judgment on the pleadings asserting that the claimant's allegations of near total disability are not supported by the medical evidence or findings on the record before this court. Although defendant concedes that claimant cannot perform his past relevant work as a welder or farm laborer, the Secretary claims this alone does not make claimant disabled under the Act. After considering claimant's age, education, and residual functional capacity, the ALJ found him not disabled under the Medical–Vocational Guidelines.

Claimant contends the decision of the Secretary denying him SSI benefits is not supported by substantial evidence. He insists he would have been found permanently and completely disabled if the Secretary had not mechanically and incorrectly set his age classification as that of a person approaching advanced age.

■ After a careful review of the record, defendant's motion for a judgment on the pleadings is denied. This case is remanded to the Secretary, who is directed to classify claimant as a person of advanced age and to compute SSI benefits accordingly. The ALJ made formulaic application of claimant's age in conjunction with the pertinent medical-vocational factors provided in 20 C.F.R., Part 404, Subpart P, Appendix 2, as they relate to his ability to do light work. The grid at Table 2 directs the ALJ to factor in age, education, and previous work experience in order to determine whether a claimant is disabled under the Act. Under the relevant Social Security Regulations, advanced age is defined as age 55 and over, while a person closely approaching advanced age is defined as age 50–54. The advanced age category reflects the point at which age can be expected to be an adverse consideration in determining a claimant's vocational adaptability to a new and different type of work. 20 C.F.R. § 404.1563.

Claimant validly protests the ALJ's determination that his age falls into the classification of a person closely approaching advanced age. Claimant was 54 years, 8 months, and 28 days at the time of the hearing, literally falling into the category of a person closely approaching advanced age. However, claimant was only 3 months and 2 days away from being considered a person of advanced age. For claimant having an advanced age category instead of a closely approaching advanced age category is the difference between being disabled under Rules 202.01 or 202.02 or being not disabled under Rules 202.11 or 202.12 of the Act. 20 C.F.R., Part 404, Subpart P, Appendix 2, Table 2.

■ Case law focusing on this narrow issue is decisive. Mechanical application of the age criteria of Medical–Vocational Guidelines is not appropriate in borderline cases. *Roush v. Heckler*, 632 F.Supp. 710, 712 (S.D.Ohio 1984). *See also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir.

1983) (tables should only serve as guidelines). 20 C.F.R. § 404.1563. "We will not apply these age categories mechanically in a borderline situation." In the *Roush* case, a 54–year–old man had worked one job for 20 years and could not physically perform that job any longer. Under the Medical–Vocational Guidelines, he was classified as a person closely approaching advanced age and found not disabled. The district court remanded the case to the Secretary to evaluate whether Roush should be classified as a person of advanced age. After the Secretary declined to classify Roush as a person of advanced age, the district court then directed the Secretary to specifically apply the rules of Medical–Vocational Guidelines in a manner permitting claimant to be classified as a person of advanced age and consequently find Roush disabled.

This action involves a borderline case quite similar to *Roush.* In both cases, the claimants were 54–year–old men with very limited job experience. In the instant case, claimant had worked at only two different jobs in the last 20–30 years, working as either a welder or a farm laborer. He can no longer do either one of these jobs. As a person only 3 months and 2 days shy of 55 years, or advanced age, at the time of the hearing, he was at the point where age could be expected to adversely affect his vocational adaptability to work differing from that of his past experience. Therefore, this case is remanded to the Secretary for the calculation of benefits. Claimant shall be evaluated as a person of advanced age. Defendant's motion for judgment on the pleadings is denied.

So ordered.