Richard A. BARRETT, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of
Social Security Administration,
Defendant.

No. Civ.A. 97–30287–KPN.

United States District Court,
D. Massachusetts.

Feb. 23, 1999.

John R. Cowie, Jr., J. Norman O'Connor, Jr., Donovan & O'Connor, Adams, MA, for Richard A. Barrett, plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Kenneth S. Apfel, Commissioner of Social Security Administration, defendant.

*MEMORANDUM WITH REGARD TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 8) and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket No. 11)*

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act, which provides for judicial review of a final decision denying Social Security Disability ("SSDI") benefits. Richard A. Barrett ("Plaintiff") has filed a motion for summary judgment claiming that the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him benefits is not based on substantial evidence. The court has treated Plaintiff's motion for summary judgment as a motion to reverse the Commissioner's decision. In turn, the Commissioner has moved to affirm.

With the parties' consent, this case has been assigned to the court pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, the court will deny Plaintiff's motion and allow the Commissioner's motion.

## I. *DISABILITY STANDARD*

An individual is entitled to SSDI benefits if he is under a disability prior to the expiration of his insured status. 42 U.S.C. §§ 423(a) and (d). *See Torres v. Secretary of Health & Human Servs.*, 845 F.2d 1136, 1137–38 (1st Cir.1988); *Cruz Rivera v. Secretary of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir.1986). The · Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). An individual is considered disabled under the Act

only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work ....

42 U.S.C. § 423(d)(2)(A). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146–48, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

When implementing the above standards, the Commissioner must use a sequential five-step analysis to determine whether a claimant is disabled. The analysis proceeds on the basis of the following questions.

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled ....

... Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past?

If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy: If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982) (citing 20 C.F.R. § 404.1520). The first three questions are "threshold" tests. If the claimant is working (question one) or if he has the physical or mental capacity to perform basic work-related functions (question two), he is automatically considered not disabled. Conversely, if the claimant has an Appendix 1–type impairment (question three), he is automatically considered disabled. In either case, his claim is determined at the "threshold." Alternatively, if the claimant's ability to perform basic work-related functions is impaired significantly but he has no Appendix 1–type impairment, the Commissioner asks the fourth and, possibly, the fifth questions. *Id.*

## II. *PROCEDURAL HISTORY*

Plaintiff, born February 2, 1942, has a high school education with past work experience as a machinist. (Administrative Record ("A.R") 124.) Plaintiff applied for SSDI on November 4, 1992, alleging an inability to work since June 2, 1992, as a result of a back injury. (A.R.116–19.) The Social Security Administration denied the application initially, (A.R.151–52), and again upon reconsideration. (A.R.168–69.) After a hearing before an Administrative Law Judge ("ALJ") on September 23, 1994, the ALJ found that Plaintiff was not disabled. (A.R.255–73.)

The Appeals Council granted Plaintiff's request for review, and on May 26, 1995, remanded the case for further proceedings. (A.R.276–79.) The specifics of the remand order are described below. In essence, the Appeals Council required that the ALJ obtain additional medical evidence and give further consideration to Plaintiff's subjective complaints of pain. (A.R.276–79.) On April 22, 1996, after a second administrative hearing, the ALJ found that Plaintiff was not disabled. (A.R.12–18.) The Appeals Council denied Plaintiff's request for review on October 23, 1997, rendering the second hearing decision final and subject to judicial review. (A.R.2–3.) That decision is now before the court.

## III. *STANDARD OF REVIEW*

A court may not disturb an administrative law judge's decision if it is grounded in substantial evidence. 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Even if the record could support multiple conclusions, a court must uphold the decision "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Secretary of Health and Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981)). *See Richardson,* 402 U.S. at 401, 91 S.Ct. 1420. Stated another way, a court must affirm the decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result. *Rodriguez Pagan v. Secretary of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987). The resolution of conflicts in evidence and the determination of disability are for the administrative decision-maker, not the doctors or the courts. *Rodriguez,* 647 F.2d at 222; *Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir.1987).

## IV. *FACTUAL BACKGROUND*

A. *Medical Evidence Prior to First Administrative Hearing*

Plaintiff first began having problems with his back in 1981 and underwent sur-

gery. (A.R.193–94.) In June 1992, Plaintiff saw Dr. Kuhrt Wieneke and complained of renewed low back pain radiating to his right foot. (A.R.194–95.) Magnetic resonance imaging (MRI) conducted on June 30, 1992, showed an extruded disc fragment at L4–5 and a small disc herniation at L5–S1. (A.R.195.) After performing a disc excision in September, (A.R.178), Dr. Wieneke reported that Plantiff was "doing fairly well" with "some recurrent low back and buttock pain" and recommended a Nautilus exercise program three times per week. (A.R.194.)

After Plaintiff applied for SSDI benefits, Dr. Robert Miceli, at the request of the Social Security Administration, reviewed the medical evidence and evaluated Plaintiff's residual functional capacity. (A.R. 140–47.) Dr. Miceli found that, despite his impairments, Plaintiff was capable of light work. (A.R.141.) Soon thereafter, Dr. Oscar Cartaya, another agency physician, reviewed the medical records and affirmed Dr. Miceli's assessment. (A.R.147.)

Dr. Robert Van Uitert, a neurologist, evaluated Plaintiff on January 4, 1993. (A.R.218–19.) Plaintiff reported to Dr. Van Uitert that his back pain had increased after a period of post-surgical improvement. Plaintiff also reported numbness and paresthesia in both hands, as well as intermittent tinnitus, which Dr. Van Uitert attributed to carpal tunnel syndrome. A subsequent back examination revealed tenderness and spasms, and electromyographic and nerve conduction studies revealed some chronic degenerative changes in plaintiff's legs. Noting that the cause of Plaintiff's leg pain was not entirely clear, Dr. Van Uitert recommended a repeat MRI. (A.R.218–19.)

Plaintiff saw again Dr. Wieneke on January 21, 1993, at which time Plaintiff complained of left thigh pain and weakness in his left leg. (A.R.194.) Dr. Wieneke did not yet have the MRI results. Upon examination, Plaintiff walked briskly with no limp and straight leg raising was negative. Dr. Wieneke noted that Plaintiff had "re-cently applied for and [was] turned down by [the Social Security Administration]. I agree [Plaintiff] is not sufficiently disabled to qualify for disability." (A.R.194.)

Physical therapy notes from February 1993, indicate that Plaintiff was tolerating aerobic exercises three times each week with periods of one to two weeks with little or no pain, but paresthesia two to three times a week. (A.R.191.) Dr. Wieneke noted in March of 1993 that further surgery at L3–4 might be necessary due to chronic multilevel lumbar disc disease. (A.R.193.)

Dr. Van Uitert's notes from April of 1993 state that, although he still complained of lower back pain and hand numbness, Plaintiff was walking well. (A.R. 229.) In May, Plaintiff reported dyspnea, and in June his doctor noted that Plaintiff had been placed on Coumadin for pulmonary embolus. (A.R.228.) In August, Dr. Van Uitert noted that Plaintiff's complaints of low back pain were probably secondary to scarring. (A.R.227.)

In September of 1993, Plaintiff also reported neck pain. A cervical x-ray revealed mild degenerative joint disease. (A.R.226.) However, an MRI in October revealed no disc herniation. (A.R.212.) Dr. Van Uitert's notes from November and December attribute Plaintiff's lower back pain to scar tissue and his neck pain to muscular strain. (A.R.217, 225.) In a January 1994 letter to Plaintiff's insurance carrier, Dr. Van Uitert opined that Plaintiff was not able to return to gainful employment primarily because of back pain due to scar tissue. (A.R.217.)

An examination by Dr. Van Uitert in February of 1994, revealed low back pain, tenderness and spasm. (A.R.224.) In March, Plaintiff reported that his neck and back pain were more tolerable, but still present. (A.R.223.) In May, Dr. Van Uitert noted that Plaintiff had begun physical therapy. (A.R.222.) The physical therapy notes indicate that Plaintiff reported improvement after treatment, but

had increased pain when cutting the grass. (A.R.241.) In August, Dr. Van Uitert indicated that Plaintiff complained of pain in the lower back and right leg and reported that "MRI shows only scaring on right." (A.R.221.) Physical therapy was discontinued in that month. (A.R.249.)

### B.  *1994 Administrative Hearing*

At the administrative hearing in August of 1994, Plaintiff testified that he lived in a trailer with his mother, sometimes cut the lawn and drove short distances. (A.R.41–43, 46.) Plaintiff also stated that he cooked, took his mother shopping and cleaned the bathroom. (A.R.45–48.) Plaintiff's other activities included reading and building model cars. (A.R.50.) Plaintiff also testified that he had trouble sleeping when his leg was acting up, that he went to a health club three times a week for exercise, and that he could only sit still for five minutes at a time. (A.R.50–54.) As indicated, the ALJ found Plaintiff ineligible for SSDI benefits.

### C.  *Appeals Court Review and Remand*

After review of the decision, the Appeals Council remanded the case so that the ALJ could gather further evidence. The Appeals Council specifically ordered the ALJ to retrieve existing medical evidence from Drs. Wieneke and Van Uitert pertaining to Plaintiff's orthopedic impairment. The Appeals Council noted that the ALJ should also request to see any existing evidence as to Plaintiff's "headaches, tinnitus, and numbness of the hands, and any findings regarding his anxiety and depression." (A.R.278.) If the ALJ found this evidence insufficient to assess Plaintiff's impairments, the Appeals Council continued, additional evidence should be obtained in order to make a proper evaluation. In addition, the Appeals Council directed the ALJ to further evaluate Plaintiff's subjective complaints of pain. Finally, if necessary, the ALJ was to gather evidence from a vocational

expert to explore possible work options. (A.R.278.)

### D.  *Evidence Gathered on Remand*

Upon remand, the ALJ obtained additional records from Dr. Van Uitert, as well as new information from Dr. James Whittum. (A.R.282–87.) Dr. Wieneke was no longer treating Plaintiff.

Dr. Van Uitert's first entry in his updated records is dated October of 1994, at which time Plaintiff reported some improvement. Records dated November of that year also indicate that Plaintiff's back pain was somewhat better and that his neck pain had diminished. (A.R.286–87.) In December, however, Dr. Uitert's notes indicate that Plaintiff's pain began to worsen. (A.R.286.) In January of 1995, Plaintiff reported that he had stopped seeing a chiropractor and, in March, Dr. Uitert noted that Plaintiff was no longer on medication. (A.R.285.) In August, Plaintiff seemed to be doing fairly well, and in November the doctor noted that Plaintiff had good days and bad days. (A.R.284.)

Dr. James Whittum first saw Plaintiff in June of 1995 for complaints of left shoulder pain. Plaintiff reported being quite active with Nautilus and had tried unsuccessfully to relieve the pain by changing his exercise regimen. Dr. Whittum diagnosed bursitis, gave Plaintiff an injection for pain relief and advised him about proper exercise. In July, Plaintiff reported excellent relief from the injection. However, in November, Plaintiff reported recurrence of shoulder pain and another injection was administered. A spur was noted on x-rays and an MRI of the shoulder in November revealed a rotator cuff tear as well as moderate arthritis. (A.R.280–82.) None of the evidence received by the ALJ indicated that Plaintiff was being treated for any psychiatric illness. (A.R.16.)

### E.  *Hearing on Remand*

At the second hearing in January of 1996, Plaintiff stated that he was planning to have shoulder surgery. (A.R.97.) In

fact, surgery was performed on March 27, 1996. (A.R.10, 280). Plaintiff also indicated that he took blood pressure medication and Tylenol, (A.R.100), did his own shopping, cooking and laundry, and still read and built model cars. (A.R.102.) Plaintiff noted that he owned a standard transmission truck and had driven about 13,000 miles in the past year. (A.R.103–04.) Plaintiff also testified that he had lower back, neck and shoulder pain, and could sit for only about ten or fifteen minutes before needing to get up and move around. (A.R.108–09.)

After considering the evidence, the ALJ decided that Plaintiff was not disabled. The ALJ found that Plaintiff did not have an impairment or a combination of impairments listed in or medically equivalent to one listed in Appendix 1. The ALJ also found that, although Plaintiff was unable to perform his past relevant work as a machinist, he had the residual functional capacity for the full range of light work, unreduced by nonexertional factors. Based on his age, education and work experience—and using medical-vocational guidelines—the ALJ found that Plaintiff was not disabled. (A.R.17–18.) The Appeals Council declined further review.

## V. DISCUSSION

### A.

█ Plaintiff claims that the ALJ improperly relied upon evidence from Dr. Wieneke, one of Plaintiff's treating physicians, concerning his condition shortly after surgery in January of 1993, rather than Dr. Van Uitert's observations before Plaintiff's initial 1994 hearing. Plaintiff claims that Dr. Van Uitert's evaluations prove that he is disabled. See generally Diaz Zayas v. Comm'r of Social Sec. Admin., 101 F.3d 680 (1st. Cir.1996) (Table) (noting that when conflicting testimony of treating physicians is involved, final decision is to be made by the Commissioner).

As an initial matter, it is unclear why Plaintiff focuses on claimed deficiencies in

the first administrative hearing. Although the ALJ incorporated by reference a summary of the evidence contained in that decision, (A.R.15), the record reflects that any deficiencies therein were fully addressed at the second hearing. Thus, it appears to the court that the ALJ fully complied with the Appeals Council's mandate to gather and review additional evidence. (A.R.16, 283–87.) In particular, the ALJ obtained updated medical reports from Dr. Van Uitert, as well as new evidence from Dr. Whittum. (A.R.16, 280–87.) As indicated, Plaintiff was no longer under Dr. Wieneke's care.

Unfortunately for Plaintiff, the additional evidence was found to be corroborative of conclusions reached at the first administrative hearing. Given this record, it is unreasonable to conclude that Dr. Wieneke's dated medical records were given controlling weight, since they were merely one of many factors considered by the ALJ. (A.R.16–17.) At bottom, the record reflects that there was substantial evidence in the record for the ALJ to otherwise reach his conclusion that Plaintiff was not disabled.

### B.

█ As required by the Appeals Council, the ALJ also reevaluated Plaintiff's subjective complaints of pain. Where the objective medical evidence does not substantiate the alleged degree of limitation due to pain, subjective evidence of pain may be introduced. Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 23 (1st Cir.1986). An administrative law judge must assess a claimant's assertions of subjective pain in accord with both Avery and federal regulations, 20 C.F.R. § 404.1529. Specifically, the administrative law judge must consider, among other things, the location, intensity and duration of the pain, whether there are any aggravating factors, the effect of any pain medication, the effectiveness of any treatment beyond medication, and the claimant's

functional restrictions and daily activities. *Id.* at 29.

Plaintiff's primary complaint to his doctors concerned back and shoulder pain. The updated medical information indicates that Plaintiff opted for exercise as treatment for these conditions, as opposed to physical therapy. (A.R.16.) The evidence also shows that Plaintiff's complaints of pain were sporadic, (A.R.16), and that he was taking over-the-counter Tylenol for pain as suggested. Other medication was not prescribed due to possible adverse interactions with Coumadin. (A.R.112.) In addition, the record indicates that, as part of his prescribed physical therapy, Plaintiff exercised and used a hot tub to relieve pain, all of which, Plaintiff acknowledged, seemed to help. (A.R.101.)

The court finds substantial evidence of record to support the ALJ's conclusion that, although some limitations had been placed on Plaintiff because of his pain, those limitations were not significant. First, Plaintiff once again described his daily activities at the second administrative hearing. (A.R.84–113.) In concluding that Plaintiff's daily activities had not been severely limited, the ALJ properly relied on the fact that Plaintiff did his own shoveling and snow blowing, took care of his two pets and did his own cooking, cleaning, shopping and laundry. Second, Plaintiff demonstrated that he remained active with a daily exercise regimen. (A.R.102, 109–11.) Although Plaintiff exercised in lieu of physical therapy, the ALJ did not unreasonably rely upon that evidence in determining that Plaintiff was not suffering disabling pain. The court cannot say that the ALJ's conclusions—that Plaintiff's pain had not severely limited him and that he was capable of performing light work—were not based on substantial evidence.

## C.

Finally, Plaintiff claims that, "[e]ven accepting all of the findings of the administrative law judge, [Plaintiff] would, as a matter of law be determined to be disabled as of February 2, 1997, the date on which [he] reached age 55." (Pl.Mem. (Docket No. 09) at 5–6.) Plaintiff passed this milestone more than one year after the second administrative hearing and more than nine months after the ALJ rendered his decision.

Pursuant to the Medical–Vocational Guidelines, otherwise know as the "Grid," set out at 20 C.F.R. Part 4, subpart P, App. 2, a person is considered to be of "advanced age" upon reaching the age of fifty-five. One is deemed to be "approaching advanced age" from the age of fifty to fifty-four. As the First Circuit has explained, "[t]he grid is designed to help the [Commissioner], when appropriate, satisfy his burden of proving the existence of other jobs in the economy that the claimant can perform." *Sherwin v. Secretary of Health & Human Servs.,* 685 F.2d 1, 2 (1st Cir.1982) (upholding validity of the Grid). This occurs at the fifth step of the analytical process. In the present matter, the ALJ utilized the Grid for just such a purpose.

The ALJ found that, based on Plaintiff's age, i.e., "closely approaching advanced age," high school education, work skills (which skills were deemed nontransferable), and exertional capacity for light work, the Grid directed a conclusion that Plaintiff was not disabled. (A.R.17–18.) *See* 20 C.F.R. Pt. 404, Subpart P, App. 2, Table 2, § 202.14. The same profile, but with a classification of "advanced age," Plaintiff asserts, would have resulted in a finding of disability. *Id.* at §§ 204.04 and 202.06.

If nothing else, Plaintiff's argument reveals the central role one's age plays in determining disability at the boundary of advanced age. Plaintiff does not claim, however, that the Grid ought not have been used or should have been used for guidance only. The use of the Grid only as a guide is most often appropriate when a claimant has nonexertional impairments. *Arce Crespo v. Secretary of Health & Human Servs.,* 831 F.2d 1, 6 (1st Cir.1987), 20

C.F.R. Pt. 404, Subpt. P., App. 2, § 200.00(e). *See also Burgos Lopez v. Secretary of Health & Human Servs.*, 747 F.2d 37, 41–42 (1st Cir.1984) (error to apply Grid where claimant has a nonexertional mental impairment); *Rivera–Figueroa v. Secretary of Health & Human Servs.*, 858 F.2d 48, 52 (1st Cir.1988) (same). That is not the case here. Instead, Plaintiff argues that the Grid ought to govern as a matter of law. He merely wishes to apply different sections of the Grid than those utilized by the ALJ. As indicated, those sections, under which Plaintiff would be considered of advanced age, would direct a conclusion that he is disabled.

As a preliminary matter, the court notes that Plaintiff did not advance this argument before the ALJ. Nowhere in the record is there documentary or testimonial evidence urging the ALJ to categorize Plaintiff as being of "advanced age," rather than simply "approaching advanced age." The first time Plaintiff raised the issue was in a letter to the Appeals Council dated March 12, 1997, (A.R.4–5), in which Plaintiff noted that he turned fifty-five on February 2, 1997, subsequent to the ALJ's decision of April 22, 1996. As indicated, the Appeals Council denied review, concluding that Plaintiff's contentions did not provide a basis for changing the ALJ's decision.

Similarly, Plaintiff's assertion that the court should now enter judgment on his behalf as a matter of law, simply because he turned fifty-five during the course of his appeal, must be rejected. Even though the Appeals Council's declination of review on October 23, 1997, arose well after Plaintiff turned fifty-five, federal regulations make clear that *all* requirements for entitlement must be met before the administrative law judge's decision. See 20 C.F.R. § 404.620. That decision "is the relevant cut-off point for determination of all factors on which the determination of disability vel non is based, including the claimant's age." *Crady v. Secretary of Health & Human Servs.*, 835 F.2d 617, 620

(6th Cir.1987). *See also Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir.1987) (claimants' age at the time of the administrative law judge's decision must govern). Likewise, courts proceed on the assumption that the date of the administrative law judge's decision, not the Appeals Council's review, controls. *See, e.g., Hill v. Sullivan*, 769 F.Supp. 467, (W.D.N.Y.1991); *Ford v. Heckler*, 572 F.Supp. 992 (E.D.N.C.1983). Were this not so, courts constantly would be remanding decisions as individuals aged through the appellate process. Here, Plaintiff was more than nine months away from his fifty-fifth birthday on February 2, 1997, when the ALJ issued his decision on April 22, 1996.

Still, an administrative law judge may not apply the Grid "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). *See Sherwin*, 685 F.2d at 4. Unfortunately, "borderline" is not specifically defined either by statute or regulation. Facing this reality, at least one court has concluded that this lack of definition delegates significant discretion to the Commissioner to determine when a situation is in fact borderline. *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir.1988). *See also Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir.1987) (Commissioner is vested with considerable discretion in borderline situations). Other courts have scoured both the regulatory history of section 404.1563(a), as well as Social Security Rulings, to get a better handle on how that discretion ought to be exercised.

In perhaps the best analysis to date, the Tenth Circuit recently explored the regulatory history of the "borderline" language in section 404.1563(a). *See Daniels v. Apfel*, 154 F.3d 1129 (10th Cir.1998). Citing *Kane v. Heckler*, 776 F.2d 1130, 1133 (3d Cir.1985), the court noted that comments accompanying the promulgation of the predecessor to section 404.1563(a) provide some guidance. There, the Commissioner explained that agency "practice over the years, in fact, has been in agreement with

the comment that the passage of a few days or months before the attainment of a certain age should not preclude a favorable disability determination." 43 Fed.Reg. 55349, 55359 (1978). The Tenth Circuit went on to note that the Commissioner repeated this view in Social Security Ruling 82–46c, when he explained that "[a] 'borderline situation' exists when there would be a shift in results caused by the passage of a few days or months." *Daniels*, 154 F.3d at 1133.

Interestingly enough, Social Security Ruling 82–46c actually adopts and incorporates the First Circuit's decision in *Fogg v. Schweiker*, 673 F.2d 1296 (1st Cir.1981) (Table).[1] The claimant in *Fogg* sought to be classified as "closely approaching advanced age," i.e., fifty to fifty-four, even though he was only forty-six at the time of the administrative hearing. S.S.R. 82–46c, 1992 WL 31427 at *1. Rejecting the plaintiff's claim that his "physiological age" rather than his "chronological age" should be considered, the First Circuit determined that the Grid was meant to incorporate chronological age only. *Id.* at *6. Still, the court noted that, in borderline cases, "the [Commissioner] is directed to apply the guidelines flexibly to avoid dramatic shifts in results." *Id.* at *8, n. 4. In the case before it, however, "a few days or months" would certainly not encompass a gap of four years. *Id. See also* S.S.R. 83–10, 1983 WL 31251 at *8 ("No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach.")

The Tenth Circuit In *Daniels* also discusses the application of "a few days or months" to "borderline situations." None of the cases cited by the court, nor any case which this court has found, would deem as borderline the nine month gap present here between the ALJ's decision and Plaintiff's fifty-fifth birthday. *Com-*

pare *Daniels*, 154 F.3d at 1131 (sixty-five days deemed borderline); *Kane*, 776 F.2d at 1132–33 (forty-eight days before next age category deemed borderline); *Leyba v. Chater*, 983 F.Supp. 1048 (D.N.M.1996) (three and a half months deemed borderline); *Davis v. Shalala*, 883 F.Supp. 828 (E.D.N.Y.1995) (three months deemed borderline); *Hill*, 769 F.Supp. at 471 (three months two days within borderline); *Chester v. Heckler*, 610 F.Supp. 533, 534–35 (S.D.Fla.1985) (thirty days within borderline); *Ford*, 572 F.Supp. at 994 (two months deemed borderline); *Hilliard v. Schweiker*, 563 F.Supp. 99, 101–02 (D.Mont.1983) (eighty-eight days within borderline); *with Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir.1996) (seven months not borderline); *Harrell*, 862 F.2d at 479 (one year not borderline); *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir.1988) (seven months not borderline); *Underwood*, 828 F.2d at 1082 (ten months not borderline). *See also Crady*, 835 F.2d at 618–19 (age within one month not deemed borderline). In fact, one court recently mentioned an "Appeals Court Interpretation" defining "borderline" as six months. *Russell v. Comm'r Social Sec.*, 20 F.Supp.2d 1133, 1134–35 (W.D.Mich.1998).

■ Given that Plaintiff was more than one year away from his fifty-fifth birthday when the ALJ heard his case, and more than nine months away when the decision was rendered, there is little wonder why Plaintiff did not raise the age issue until the matter was on appeal to the Appeals Council. Under these circumstances, the court cannot say that the ALJ ought to have pursued the issue on his own. *Cf. Daniels*, 154 F.3d at 1134–35 (burden on Commissioner to consider appropriate Grid provision in borderline age situations); *Hilliard*, 563 F.Supp. at 101 ("the failure of the ALJ to state why the 'age' categorization was accomplished mechanically represents sufficient grounds for re-

---

1. In *Kane,* 776 F.2d at 1133, the *Fogg* decision is inaccurately attributed to the Tenth Circuit.

mand."). Plaintiff's case simply was not a borderline situation.

Plaintiff's claim is made more difficult by another fact. Plaintiff did not turn fifty-five until after his insured status for purposes of SSDI eligibility expired on December 31, 1996. A disability, of course, must be shown to exist prior to the expiration of one's insured status. *See* 20 C.F.R. § 404.131(b)(2). While the court is not prepared to conclude that this factual scenario in and of itself, would automatically preclude Plaintiff from demonstrating that he was eligible for SSDI prior to the expiration of his insured status, it certainly precludes the court from finding him eligible as a matter of law. *Compare Hilliard,* 563 F.Supp. at 101–02.

Of course, Plaintiff may have since become eligible for Supplemental Security Income ("SSI") benefits, eligibility for which is not dependent on an insured status. A claimant is entitled to SSI benefits, if, among other things he is needy and under a disability. *See* 42 U.S.C. §§ 1381a and 1382c(a)(3). Plaintiff could certainly apply for such benefits, if he has not done so already. However, the question of SSI eligibility is not before the court.

## VI. *CONCLUSION*

For the foregoing reasons, Defendant's motion to affirm the decision of the Commissioner will be allowed. Plaintiff's motion to reverse will be denied. A separate order shall issue.