**Paul JUSTICE, Plaintiff**

v.

**Michael ASTRUE, Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 07–11017–WGY.**

United States District Court,
D. Massachusetts.

Sept. 11, 2008.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Defendant.

Bruce S. Lipsey, Epstein, Lipsey & Clifford, P.C. Hanover, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Paul Justice ("Justice") brings this action against Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"). Justice seeks to have this Court review and reverse or, in the alternative, remand the decision of the Commissioner denying Justice's application for Supplemental Security Income. The Commissioner moves for an order affirming his final decision.

## A. Procedural Posture

Justice filed an application for Supplemental Security Income on May 26, 2004. Pl.'s Br. at 2. His application was initially denied on October 12, 2004 and denied upon reconsideration on February 5, 2005. *Id.* The case was brought before a hearing officer, U.S. Administrative Law Judge Stephen C. Fulton ("hearing officer") on August 1, 2006, at which point the application was denied for a third time. *Id.* The Appeals Council denied Justice's request for review on September 23, 2006. *Id.*

Justice filed his complaint [Doc. No. 1] with this Court on May 31, 2007. The Commissioner filed his answer [Doc. No. 3] on July 26, 2007. On July 27, 2007 this Court approved a motion to leave the administrative transcript ("Admin. Tr.") in nonelectronic, unredacted form. Justice submitted the present Motion to Reverse or Remand [Doc. No. 6] and its accompanying memorandum ("Pl.'s Br.") [Doc. No. 7] on September 21, 2007. On October 29, 2007 the Commissioner responded by submitting to the Court a Motion for an Order Affirming the Decision of the Commissioner [Doc. 8], in addition to a memorandum ("Def.'s Br.") in support of his motion [Doc. 9].

## B. Facts

At the time of the administrative hearing Justice was a 49–year–old man with a high school education. Admin. Tr. at 22. He had worked for 26 years as a carpenter. Pl.'s Br. at 2.

Justice alleges medical ailments that include chronic low back pain, disorders of the right knee, inguinal hernia, anxiety, shoulder pain, hypertension, and anemia. Admin. Tr. at 16.

Justice had a consult examination with a psychiatric examiner on November 21, 2003. *Id.* at 54. The examiner concluded that Justice suffered from 30 years of alcohol abuse, from which he was in partial remission, and that he reported some symptoms of anxiety. *Id.* at 56. The examiner determined that Justice could have

a fair prognosis provided that he received appropriate psychiatric treatment and that he maintained his sobriety. *Id.*

Justice had a second consult examination with a Disability Determination Services ("DDS") psychiatric examiner on September 24, 2004. *Id.* at 117. The examiner diagnosed Justice with persistent alcohol dependence and determined that he was in need of extended sobriety and substance abuse treatment, after which it would be possible to assess his baseline psychological function and treat any residual anxiety or depression. *Id.* at 122. He also concluded that due to Justice's alcohol dependence Justice could not manage his own funds if awarded benefits. *Id.*

On December 2, 2003 Justice had a Mental Residual Functional Capacity Assessment completed by a DDS physician. *Id.* at 57. The physician found that Justice was moderately limited in his ability to maintain attention and concentration for extended periods, moderately limited in his ability to complete a normal work day without interruptions from psychologically based symptoms, and moderately limited in his ability to interact appropriately with the general public. *Id.* at 57–58. A Psychiatric Review Technique form was also completed at that time, which concluded that Justice suffered from mild limitations that restricted activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and insufficient evidence of episodes of decompensation. *Id.* at 71.

A second Mental Residual Functional Capacity Assessment and a second Psychiatric Review Technique were completed by a DDS physician on October 5, 2004. *Id.* at 123, 127. In the Mental Residual Functional Capacity Assessment the physician found that Justice was, inter alia, moderately limited in his ability to understand and remember detailed instructions, moderately limited in his ability to maintain attention and concentration for extended periods, moderately limited in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms, moderately limited in his ability to interact appropriately with the general public, and moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* at 123–24. In the Psychiatric Review Technique the physician determined that Justice suffered from affective disorders, anxiety-related disorders, personality disorders, and substance addiction disorders. *Id.* at 127. Of the affective disorders, the physician found depressive syndrome, including difficulty concentrating or thinking. *Id.* at 130. Relating to the personality disorder, he found "inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress." *Id.* at 134.

Justice was independently examined by a psychologist, Dr. Edward Powers, on January 14, 2005. *Id.* at 156. Dr. Powers concluded that Justice had the potential to work, although not in the same capacity as before due to physical limitations. *Id.* at 158. He further determined that Justice suffered from affective symptoms that derived in part from physical limitations. *Id.*

A third Mental Residual Functional Capacity Assessment and a third Psychiatric Review Technique were completed by a DDS physician on February 1, 2005. *Id.* at 159–76. In the Psychiatric Review Technique the physician concluded that Justice suffered from mild restriction of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. *Id.* at 169. In the Mental Residual Functional Capacity Assessment the DDS physician found,

inter alia, that Justice was moderately limited in his ability to understand, remember, and carry out detailed instructions, moderately limited in his ability to maintain concentration for extended periods of time, and moderately limited in his ability to interact appropriately with the public. *Id.* at 174.

A Physical Residual Capacity Assessment was completed by a DDS physician on January 12, 2004. *Id.* at 82. She found that Justice was limited to lifting 50 pounds occasionally, lifting 25 pounds frequently, sitting, standing or walking for a total of six hours in a normal eight-hour work day. She also found that he could push or pull unlimited amounts. *Id.* at 83. The physician concluded that Justice's symptoms attributed to a medically determinable impairment. *Id.* at 87.

A second Physical Residual Capacity Assessment was completed by a DDS physician on August 17, 2004. *Id.* at 108. This physician drew similar conclusions to the previous doctor with the exceptions of finding that Justice was severely impaired by depression and anxiety, that he could lift 20 pounds only occasionally, and that he could lift 10 pounds frequently. *Id.* at 109, 116.

Justice's treating physician is Dr. Robert Scarlatelli ("Dr. Scarlatelli"). *Id.* at 76. Dr. Scarlatelli diagnosed Justice with a nervous condition on January 8, 2004 but determined that, despite the condition, he could deal with routine stress, travel independently in public, and had no memory, concentration, or attention deficits. *Id.* On January 6, 2004, Dr. Scarlatelli also diagnosed Justice with hypertensive disorder and disc disease. *Id.* at 78–79. Dr. Scarlatelli concluded, however, that Justice's prognosis was excellent with respect to the hypertensive disorder, and he found that Justice suffered from an intermittent, dull ache from the lower back pain, for which he recommended physical therapy.

A radiology report from Jordan Hospital on May 13, 2006 concluded that Justice suffered from degenerative disk findings at his L4–5 without evidence of acute herniation, as well as sacralization of the left side of the L5 with moderate degenerative facet disease on the right at L5–S1. *Id.* at 229.

Dr. Scarlatelli completed a Supplemental Questionnaire as to Residual Functional Capacity on June 6, 2006. *Id.* at 231. He found, inter alia, that Justice suffered from severe deterioration in personal habits and severe constriction of interests. *Id.* He also found that Justice suffered from moderately severe restrictions in responding to customary work pressures and moderately severe limitations in performing complex tasks.

In a Physical Capacities Evaluation completed by Dr. Scarlatelli on July 10, 2006 he concluded that during an 8–hour day, Justice could sit for a total of two hours, stand for a total of one hour, and walk for a total of one hour. *Id.* at 230. Moreover, he determined that Justice could not bend, squat, crawl or climb, nor could he lift or carry anything. *Id.* Dr. Scarlatelli also found, however, that Justice was capable of fine manipulation with his hands and that he could use his feet for repetitive movements, such as pushing or pulling leg controls. *Id.*

## C. Federal Jurisdiction

This Court has jurisdiction to hear appeals from final orders or decisions of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's Social Security determination is limited by section 405(g) of the Social Security Act, which

provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Manso–Pizarro v. Secretary of Health and Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996). The substantial evidence standard is satisfied when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." *Ortiz v. Secretary of Health and Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health,* 647 F.2d 218, 222 (1st Cir.1981)). Furthermore, factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner. *Id.*

Accordingly, this Court must affirm a decision reached by the Commissioner, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Servs.,* 819 F.2d 1, 3 (1st Cir. 1987). Thus, this Court may only overturn the Commissioner's denial of benefits if he has "committed a legal or factual error in evaluating a particular claim." *Manso–Pizarro,* 76 F.3d at 16.

**B. Social Security Disability Standard**

The claimant, Justice, bears the initial burden of showing that he is disabled within the meaning of the Social Security Act. *Deblois v. Secretary of Health and Human Servs.,* 686 F.2d 76, 79 (1st Cir.1982). An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Evidence of impairment is not in itself enough to warrant an award of benefits. *See McDonald v. Secretary of Health and Human Servs.,* 795 F.2d 1118, 1120 (1st Cir.1986). The Social Security Act further provides that "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step sequential analysis used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. *Id.*

**C. The Hearing Officer's Decision**

The hearing officer made the following findings: (1) Justice has not engaged in substantial gainful activity since January 15, 2004; (2) he has a combination of several severe impairments that include status post-hernia repair, anxiety, degenerative joint disease of the right knee, and disorders of the lumbar spine; (3) Justice does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1; (4) he has a residual functional capacity for unskilled work at a sedentary exertional level with the limitation of being able to push, pull, climb, balance, stoop, kneel, crouch, or crawl only occasionally, in addition to being able to understand and remember simple instruction as well as concentrate for only two hours at a time; (5) Justice cannot perform any past relevant work; (6) he was born on December 19, 1956 and was 47 years old when his application was filed, which is defined as a younger age individual; (7) he has at least a high school education and is able to communicate in English; (8) transferability of Justice's job skills is not material to the determination of disability given 20 C.F.R. Part 404, Subpart P, Appendix 2 (Rule 5201.17–201.22); (9) considering Justice's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Justice could perform. Consequently, the hearing officer concluded that Justice has not been under a "disability" since January 15, 2004.

### D. Challenge to the Hearing Officer's Decision

Justice raises three challenges to the hearing officer's decision: the hearing officer (1) did not meet his burden of proof regarding Justice's ability to work in step five, (2) failed fully and fairly to analyze Justice's chronic pain as a potential basis for disability, and (3) did not properly evaluate Justice's chronic mental impairments and stress levels.

### 1. Improper evaluation of Justice's ability to work.

█ Justice first argues that the Commissioner did not meet his burden of proof at step five of the disability determination analysis because the hearing officer failed to factor into his decision Justice's non-exertional limitations. Pursuant to 20 C.F.R. § 416.920 and as explained above, a

hearing officer must follow a five-step sequential process in determining whether someone is disabled. At the fifth and final step, the hearing officer looks at the plaintiff's residual functional capability, age, education, and work experience in order to determine whether the individual is disabled or not. 20 C.F.R. § 416.920(a)(4)(v). If the hearing officer determines that an individual cannot perform the work for which he was previously employed, the hearing officer must then consider the individual's residual functional capability, along with other vocational factors (including age, education, and experience), to determine if the person can make the transition to other forms of work. 20 C.F.R. § 416.920(g)(1).

In this case the hearing officer determined that Justice was not capable of performing any past relevant work. Admin. Tr. at 22. He concluded that Justice has a residual functional capability of performing unskilled work at a sedentary exertional level but with some limitations. *Id.* at 18. In determining if Justice could perform other jobs, the hearing officer applied Justice's residual functional capability (along with the other vocational factors) to a Residual Functional Capability Table found at 20 C.F.R. Part 404, Subpart P, Appendix 2. Had the hearing officer determined that Justice had no limitations at the sedentary exertional level, Justice would be considered not disabled according to rule 201.21. *Id.* at 23. Because of the limitations to Justice's residual functional capability, however, the hearing officer could not use the table to make a de facto decision and instead had to incorporate the testimony of a vocational specialist in order to determine whether jobs that Justice could perform existed in the national economy. *See* 20 C.F.R. § 416.966(e).

Justice contends that the hearing officer did not factor into his decision Justice's alleged non-exertional limitations. Pl.'s

Br. at 5. He is mistaken. It appears that what Justice means to say is that the hearing officer did not reach his decision by considering Justice's mental disability allegations. The hearing officer had already discounted these limitations, however, when he made a determination as to Justice's residual functional capacity. There is no requirement in the statute that the hearing officer reconsider additional alleged limitations that were already considered and discounted at a previous step.

When, during the examination of the vocational expert, the hearing officer described a person with what was intended to be the same limitations as Justice, he described someone with the residual functional capacity and limitations that he later attributed to Justice. *See* Admin. Tr. at 18, 261. In particular, the hearing officer stated that the person the vocational expert should imagine was mentally capable of remembering and understanding simple instructions, could concentrate for two-hour periods on simple tasks, could interact appropriately with other office members, and could adapt to changes in his work setting. *Id.* at 18. Thus, there is sufficient evidence to show that the hearing officer considered non-exertional limitations when he made. his decision that Justice is not disabled and that he followed the protocol listed in the statute.

Justice also argues that the hearing officer did not take into account the vocational expert's testimony, elicited by Justice's counsel, that a person with the same physical impairments as Justice but additional mental impairments would be disabled. Pl.'s Br. at 5. Counsel for Justice presented the expert with a hypothetical person with the same physical restrictions laid out by the hearing officer, as well as the following mental impairments: severe impairment in deterioration of personal habits, severe constriction with interest, and moderately severe restriction

of daily activities. Admin. Tr. at 265. The vocational expert responded that a person with those limitations would not be able to work. *Id.* The mental limitations that Justice's counsel presented the vocational expert with were, in fact, the same limitations with which Justice's treating physician, Dr. Scarlatelli, had diagnosed Justice in the Supplemental Questionnaire as to Residual Functional Capacity completed on June 6, 2006. *Id.* at 231, 265. Thus, counsel was essentially asking the vocational expert how he would rule based on the treating physician's diagnosis of Justice, which is the diagnosis most sympathetic to Justice's case. The hearing officer, however, had already made a credibility determination as to Dr. Scarlatelli's report and found it to be in conflict with the record as a whole. *Id.* at 20. Bearing in mind that credibility determinations are reserved for the Commissioner, this Court can only overturn or remand his determinations if they are not supported by substantial evidence.

Thus, the Court concludes the hearing officer included all of his residual functional capacity conclusions, including those regarding mental limitations, in his hypothetical question to the vocational expert. The further testimony by the vocational expert that yielded a conclusion of disability was based on medical conclusions that the hearing officer had already evaluated and to which he had assigned reduced weight. *Id.*

### 2. Failure fully and fairly to analyze Justice's chronic pain as a potential basis for disability

■ Justice's argument with respect to pain is unclear. The basis of his claim appears to be that the hearing officer failed fully and fairly to analyze the evidence with respect to his alleged pain. Pl.'s Br. at 5. He correctly cites to caselaw from this Circuit establishing that pain

may be considered a non-exertional limitation and at times may be found to preclude work. *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 666 n. 8 (1st Cir.1981). His allegations, for which he does not provide citations to the administrative transcript, refer loosely to the hearing officer's credibility decision, which is supported by substantial evidence.

In a general assessment of Justice's claim, there is substantial evidence to show that the hearing officer thoroughly took into consideration Justice's subjective allegations of pain. Provided that the hearing officer reached his decision by weighing non-medical evidence along with objective medical evidence, it is within his province to determine that pain does not significantly impair a claimant's ability to work. *Gordils v. Secretary of Health and Human Servs.*, 921 F.2d 327, 330 (1st Cir. 1990).

The hearing officer specifically noted in his opinion that he did not discount the possibility that Justice could indeed suffer from pain and that it could, to some extent, limit some tasks. Admin. Tr. at 19. He concluded, however, that Justice's statements appeared to be inconsistent with the objective evidence that did not demonstrate the existence of limitations that prevented Justice from working. *Id.*

■ When subjective allegations of pain are not supported by objective findings, the hearing officer must obtain specific details from the claimant regarding his alleged pain and its effects. *Corchado v. Shalala*, 953 F.Supp. 12, 15 (D.Mass.1996). In this instance, the hearing officer specifically asked Justice about his medical con-

ditions. Although the hearing officer did not extensively question Justice, he acknowledged that Justice's attorney would address these issues during his questioning, which counsel did. Admin. Tr. at 248–249. In response to his attorney's questions, Justice gave detailed descriptions of his physical state at the time of the testimony, his daily activities, sources of pain, and pain medications. *Id.* at 251–257. Thus, unlike the *Corchado* case, Justice was given the opportunity to testify fully as to the extent of his pain. Given that credibility determinations made by the hearing officer generally should be given deference, there is here substantial evidence to uphold the hearing officer's decision on the issue of pain. *See Corchado*, 953 F.Supp. at 16.

### 3. Failure properly to evaluate Justice's chronic mental impairments and stress levels

■ The hearing officer determined that Justice suffered only one mental impairment: anxiety. Admin. Tr. at 16. He reached this conclusion after examining the medical records and finding that a diagnosis of an anxiety impairment was supported by signs, symptoms, and laboratory findings. *Id.*

Justice argues that his "multiple impairments (depression, concentration, anxiety, etc.) are equivalent in severity to a listed impairment." Pl.'s Br. at 6. Justice then cites to 20 C.F.R. § 416.923, which provides that a hearing officer must bear in mind the combined effect of all impairments regardless of whether each would be considered of "sufficient severity" on its own.[1] An impairment must "result from

---

1. Justice also alleges depression as a listed disability but this is a tricky issue. Although many of his physicians mentioned depressive symptoms in their reports, most also say that with treatment he will get better. This relates to the fact that he is an alcoholic; it is difficult to determine to what extent his depres-

sive symptoms would exist were that not the case. Under present law, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the

anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Remembering that factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner, it is ultimately his prerogative to determine whether Justice suffers from multiple mental impairments. *Ortiz,* 955 F.2d at 769. When considering the record as a whole, there is sufficient evidence to show that the hearing officer considered all of Justice's various medical allegations individually and as a whole.

**E. Age as a consideration in the hearing officer's decision**

■ Neither party addresses the issue of Justice's age. The hearing officer concluded in his decision that Justice was 47 years old when he applied for benefits and, according to Appendix 2, should be classified as a "younger individual." Admin. Tr. at 22. This would appear to be a mistake. For the purposes of the Social Security regulations, age is determined at the date of the decision, not the date of the application or the date of the administrative hearing. *Barrett v. Apfel,* 40 F.Supp.2d 31, 38 (D.Mass.1999) (Neiman, M.J.); *see also Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987). As Justice's birthday is December 19, 1956, he would have been 49 at the time the hearing officer made his decision on September 23, 2006–less than four months shy of his 50th birthday. Admin. Tr. at 22, 30. This makes a difference. At age 50, according to Appendix 2, an applicant falls within the category of "closely approaching advanced age." *Id.* Were Justice's case to be evaluated under the category of "closely approaching advanced age," given his work experience and education, one would expect him to be found disabled pursuant to Rule 201.12.

Justice should have been considered by the hearing officer as having a "borderline" age:

When we make a finding about your ability to do other work under § 404.1520(f)(1), .... [w]e will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). While the exact meaning of "borderline" is unclear, the *Barrett* court noted that "[a] 'borderline situation' exists when there would be a shift in results caused by the passage of a few days or months." *Barrett,* 40 F.Supp.2d at 38 (quoting *Daniels v. Apfel,* 154 F.3d 1129, 1133 (10th Cir.1998)). This would be true in Justice's case. Moreover, "the failure of the [hearing officer] to state why the 'age' categorization was accomplished mechanically represents sufficient grounds for remand." *Id.* at 39 (quoting *Hilliard v. Schweiker,* 563 F.Supp. 99, 101 (D.Mont.1983)).

There is no mention of Justice's borderline age status in the hearing officer's decision. This may well be outcome determinative because, as already noted, according

Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C). Therefore, it is likely that the hearing officer considered the evidence demonstrating that Justice suffers from depressive symptoms but discounted it because of its direct relation to substance abuse.

to Appendix 2 the difference between age 49 and 50 apparently constitutes the difference between being disabled or not. Justice, moreover, did not concretely fit into the "younger individual" category because he cannot perform a full range of sedentary work. Thus, the hearing officer had a higher duty to consider all factors (including borderline age status) in determining whether Justice was disabled or not. Moreover:

> "[u]nder the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations. For the majority of individuals who are age 50 or older and who are limited to the full range of sedentary work by their medical impairments, the rules and guidelines in appendix 2 require a conclusion of 'disabled.'"

Policy Interpretation Ruling Titles II and XVI, SSR 96–9p, 1996 WL 374185, at *3.

## III. CONCLUSION

Because neither party has briefed the age issue or its relationship to the other issues raised in this case, this Court requests further briefs addressing these matters to be submitted within 30 days of the date of this memorandum. The parties should also explore a voluntary remand to allow the hearing officer to clarify what age he used in considering Justice's disability status and, if he used the appropriate age of 49, to elaborate on whether he considered Justice a borderline case or not and list the reasons for his decision.

SO ORDERED.