Ron HEIM, Plaintiff,

v.

**Donna SHALALA, Secretary, Department of Health and Human Services, Defendant.**

No. C 92–4099.

United States District Court,
N.D. Iowa,
Western Division.

June 30, 1995.

Joseph George Basque, Council Bluffs, IA, for plaintiff.

Willis A. Buell, Asst. U.S. Atty., Sioux City, IA, for defendant.

## ORDER

DONALD E. O'BRIEN, Senior District Judge.

This case comes before the court on plaintiff Heim's appeal of the Secretary's decision. After considering the parties' oral and written arguments, the court affirms the decision of the Secretary.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on September 25, 1990. (Tr. at 145–47). This application was denied initially and upon reconsideration by the Social Security Administration (SSA). (Tr. at 148–49; 161–62). On March 7, 1991, plaintiff requested a hearing before an Administrative Law Judge (ALJ) which was held on June 19, 1991. (Tr. at 165; 50). Because the record suggested that plaintiff had some memory and concentration problems, the ALJ vacated the reconsideration determination and remanded the case to the Disability Determination Services of the State of Iowa for an evaluation of plaintiff's memory and concentration problems, and for a new reconsideration determination. (Tr. at 16; 351–352). Following an unfavorable redetermination by Disability Determination Services, plaintiff again appealed and a hearing was held on February 19, 1992, before an ALJ. (Tr. at 89). On April 14, 1992, the ALJ issued a decision finding that plaintiff was not disabled and denied benefits. (Tr. at 16–29). The Appeals Council of the SSA denied

plaintiff's request for review of the ALJ's decision, and thus, the decision of the ALJ stood as the final decision of the Secretary. (Tr. at 6–7). Plaintiff then appealed the Secretary's decision to this court under 42 U.S.C. §§ 401 et seq., which provides for judicial review of a "final decision" of the Secretary of Health and Human Services.

While the appeal of plaintiff's first application for benefits was pending in this court, plaintiff filed a second application for disability benefits and supplemental security income benefits on December 3, 1993. In this application, plaintiff alleged an inability to engage in any type of substantial and gainful work activity since April 15, 1992. Heim's application was denied at the initial and reconsideration levels of administrative determination. On November 15, 1994, Heim had a hearing before an ALJ who found that Heim was entitled to a period of disability effective as of April 15, 1992. (See Ex. A attached to Clerk's Memorandum of Papers at # 26). The ALJ found that she could not set a disability eligibility date prior to April 15, 1992, as a result of the previous ALJ decision denying Heim benefits. Because of this new administrative decision, this court's review on appeal is now limited to the issue of whether Heim was disabled during the period from September 25, 1989, the date when plaintiff allegedly became unable to work, until April 15, 1992.

## II. ISSUES

A. **Whether the hypothetical questions presented to the vocational expert included all of plaintiff's exertional and non-exertional limitations.**

B. **Whether there is evidence to support the ALJ's decision to discount plaintiff's subjective complaints of pain under the standard of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984).**

C. **Whether new evidence from a substance abuse treatment center that plaintiff attended is material to plaintiff's disability claim and whether or not it should be considered in this appeal.**

## III. STANDARD OF REVIEW

■ The Eighth Circuit's standard of review in Social Security cases is well-established. This Court must affirm the findings of the ALJ if they are supported by substantial evidence in the record as a whole. *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir.1994) (citations omitted); 42 U.S.C. § 405(g). " 'Substantial evidence is less than a preponderance' ..." *Orrick v. Sullivan*, 966 F.2d 368, 371 (8th Cir.1992) (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992)), but " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Put another way, "[t]he standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.' " *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir.1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir.1991)).

■ When evaluating the evidence in an appeal from the Secretary's denial of benefits, the Court must perform a balancing test, evaluating any contradictory evidence. *Sobania v. Secretary of HHS*, 879 F.2d 441, 444 (8th Cir.1989) (citing *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987)). "[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [this Court] must affirm the [Secretary's] decision." *Orrick, supra*. Even if this Court "might have weighed the evidence differently, [it] may not reverse the Secretary's decision when there is enough evidence in the record to support either outcome." *Culbertson*, 30 F.3d at 939 (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992)). "Review under this standard is not a rubber stamp for the ALJ, however." *Griffon v. Bowen*, 856 F.2d 1150, 1153 (8th Cir.1988) (citations omitted). The Court must at all times keep in mind that

prior to granting or denying benefits, the ALJ has " 'a duty to fully and fairly develop the record even if ... the claimant is represented by counsel.' " *Battles v. Shalala,* 36 F.3d 43, 44 (8th Cir.1994) (quoting *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir.1992); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir.1990) ("In denying disability, the ALJ does not have to discuss every piece of evidence presented, but must develop the record fully and fairly")). "This is so because an administrative hearing is not an adversarial proceeding." *Id.* (citing *Henrie v. Dep't of Health and Human Services,* 13 F.3d 359, 361 (10th Cir.1993)). " '[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.' " *Id.* (quoting *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988)). "Moreover, '[a]n adequate hearing is indispensable because a reviewing court may consider only the Secretary's final decision [and] the evidence in the administrative transcript on which the decision was based.' " *Id.* (quoting *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir.1992) (per curiam)). With these standards in mind, the Court will now turn to the ALJ's evaluation of Mr. Heim's application for benefits.

## IV. FACTS

Plaintiff is 42 years old. He is 6'1" tall and weighs between 150–155 pounds. (Tr. at 55–56). Plaintiff dropped out of school in the 8th grade, but earned his General Equivalency Diploma (GED) while in the army in 1973. (Tr. at 130; 57). He has had no further education (Tr. at 57), and the record shows that plaintiff is seriously limited in his ability to read and write (Tr. at 188, 439).

Most of plaintiff's past employment was as a construction worker. On September 25, 1989, plaintiff was working on a construction site and suffered a 15–20 foot fall. (Tr. at 210). This is the alleged onset date of plaintiff's disability. As a result of the fall, he sustained several injuries including a fractured skull, a fractured left clavicle, fractures to several ribs, and a ruptured spleen which was later removed. (Tr. at 210, 236). After the accident, plaintiff started physical therapy in Carroll, Iowa, primarily for plaintiff's

left shoulder. In May of 1990, a Magnetic Resonance Image (MRI) was performed on plaintiff's left shoulder due to continuing pain and weakness in the shoulder. (Tr. at 270). As a result of the MRI, arthroscopic surgery was performed in June of 1990 and physical therapy continued until August 1990. (Tr. at 270, 273, 276).

In addition to plaintiff's shoulder problems, MRI's taken in August of 1990 and October of 1991 showed that plaintiff suffered from degenerative disk disease of the lower back. (Tr. at 281–284; 418). Plaintiff has undergone physical therapy for this condition. The insurer on plaintiff's worker's compensation claim determined that plaintiff's back problems were unrelated to his work injury, and therefore did not consider his back problems in determining an overall permanent partial impairment. Plaintiff states that he has had back pain since 1980, but alleges that his current problems are related to his work injury in September of 1989.

As a result of plaintiff's physical problems, plaintiff has some exertional limitations. At plaintiff's June 1991 hearing, plaintiff stated that he could walk two to three miles on an even surface and stand about two to three hours. (Tr. at 73). He could lift 25 pounds and sit maybe two to three hours. (Tr. at 75). Plaintiff also cited problems with frequent headaches that last for 20 to 30 minutes and that require plaintiff to lie down flat on the floor for some relief. (Tr. at 75–76). At the February 1992 hearing, plaintiff stated that he could not walk more than ½ mile at a time, and that he could stand for a half hour to an hour. He has no difficulty using his hands, but stated that his left arm gives him problems. (Tr. at 111–112). A vocational rehabilitation assessment by the Veterans Administration concluded that plaintiff should not sit for more than ½ hour or walk more than ½ mile, and that plaintiff could lift 25 pounds frequently and 50 pounds occasionally. (Tr. at 128).

Plaintiff also alleges significant non-exertional impairments as a result of the head injury he suffered and the effect of this accident on his life. Doctors have noted that plaintiff has been depressed, (Tr. at 156), and that he has considered suicide (Tr. at 268).

A psychological exam done on plaintiff in July of 1991 showed that plaintiff became easily frustrated when confronted with difficult tasks, and that he had a hard time remaining on a certain task (Tr. at 380–382). It was also noted that plaintiff had difficulty with short term memory, that his social judgment and comprehensive skills are somewhat impaired, and that his visual memory process is impaired. Additionally, plaintiff states that as a result of the pains in his back, he has to sleep on the floor and, therefore, only gets about two hours of sleep each night (Tr. at 122). Finally, plaintiff suffers from a chronic alcohol abuse problem that plaintiff alleges is exacerbated by his injury and subsequent inability to work. A discharge summary from plaintiff's most recent abuse treatment in the fall of 1993, shows that plaintiff began abusing alcohol when he was 12 years old and has had six arrests for Driving while Intoxicated (DWI), and in the past two years has been drinking continuously between 12 and 24 beers per day. In the past, plaintiff has also abused marijuana, crank, and cocaine.

## V. DISCUSSION

### A. Whether the hypothetical questions used by the ALJ included all of plaintiff's exertional and non-exertional limitations.

Plaintiff seeks reversal of the ALJ's decision based upon defects in the three hypothetical questions posed by the ALJ to the vocational expert. Plaintiff argues that none of the hypothetical questions included all of plaintiff's *exertional* and *non-exertional* limitations. As for *exertional* limitations, Heim argues that the medical records show that he cannot sit for longer than 30 minutes at a time, and that he needs to shift between sitting and standing positions. (Tr. at 423, 438). Plaintiff argues that the second and third hypothetical questions asked the vocational expert to assume that plaintiff could sit for more than 30 minutes at a time, even for as long as two or three hours. Because these two hypotheticals would require sitting for more than 30 minutes at a time, plaintiff argues that those hypotheticals are defective and should not be considered. The first hypothetical posed by the ALJ assumed that the plaintiff could sit for up to 30 minutes, and then found that if that were true plaintiff could perform light and sedentary jobs. Plaintiff argues that Social Security Ruling (SSR) 83–12 prohibits this finding. Under SSR 83–12, a person who has to sit and stand intermittently "is not functionally capable of doing either the prolonged sitting ... of sedentary work ... or the prolonged standing or walking contemplated for most light work." Plaintiff also claims that each of the three hypotheticals improperly assumed that plaintiff could engage in occasional bending. Plaintiff testified that he cannot bend (Tr. at 74), and plaintiff asserts that there is no evidence in the record contradicting this. Plaintiff also claims that under SSR 85–15, some bending is required for almost any work, and, therefore, plaintiff must be considered disabled.

Plaintiff also contends that each of the hypotheticals are flawed because they did not include all of his *non-exertional* impairments. These impairments include difficulty reading and writing, problems with math skills, and problems with residual effects of plaintiff's head injury, including loss of concentration and memory. Heim asserts that the ALJ improperly asked the vocational expert to assume in each of the three hypotheticals that plaintiff could do "... simple routine repetitive work not requiring close attention to detail...." (Tr. at 136). The plaintiff argues that any hypothetical question which assumes that a claimant has a particular residual functioning capacity is defective. *Simonson v. Schweiker*, 699 F.2d 426, 430 (8th Cir.1983). Most importantly, plaintiff states that the ALJ failed to address plaintiff's July 28, 1991, psychological evaluation conducted by Dr. Joneson following a remand by the Secretary to develop the record on plaintiff's *non-exertional* impairments. This examination concluded that plaintiff's *non-exertional* impairments, including his pain, headaches, memory difficulties, and borderline verbal skills, "would make it extremely difficult for him to secure employment at the competitive market place." (Tr. at 382).

Defendant responds that the third hypothetical question asked of the vocational expert, which is the one the ALJ relied upon in making his nondisability determination, was valid and contained all of the limitations that were supported by the record. (Tr. at 139.) The third hypothetical asked the vocational expert to assume the following:

1. Plaintiff's age, education, and former work experience;

2. that plaintiff could not lift more than 25 pounds, *sit for more than one hour,* walk more than ½ mile to one mile at a time, perform repetitive bending, or repetitive work with his left arm;

3. that plaintiff could not work at unprotected heights;

4. that plaintiff could do only simple, routine tasks, not requiring close attention to detail or use of independent judgment and requiring occasional supervision;

5. and that plaintiff should not work at stress levels of greater than five using a one to ten stress scale.

(Tr. at 139). Based upon this hypothetical, the vocational expert found that plaintiff could not return to his past work, but could do light and sedentary work such as a small parts assembler, hand packager, and parking booth attendant. Defendant contends that this third hypothetical question contains all the restrictions supported by the record, and asserts that the sitting and bending restrictions are consistent with plaintiff's testimony at the hearing. The Secretary also states that the ALJ did consider and account for the opinions of Dr. Joneson, and argues that the vocational expert was asked to assume that plaintiff could only perform simple, repetitive work. (Tr. at 139).

■ The court has carefully reviewed the third hypothetical question listed above. The court finds that this question does include all of the exertional and non-exertional impairments that were supported by the record. The one hour limit on sitting is consistent with plaintiff's own testimony that he could sit for "... about an hours range ..." and that he could sit through an hour long TV program. (Tr. at 114). The bottom line is that when the third hypothetical set out that he could not sit for more than one hour it was not without support in the record.[1] Moreover, the court is not persuaded that SSR 83–12, which is a ruling that relates to the application of the Medical–Vocational Guidelines, prohibits a finding that plaintiff can perform light or sedentary work.[2] The SSR guidelines cited by Heim apply only in cases where a claimant asserts only *exertional* limitations. In this case, plaintiff claims both *exertional* and *non-exertional* limitations and, therefore, SSR 83–12 does not apply. *See Clark v. Shalala,* 28 F.3d 828 (8th Cir.1994).

■ The court also rejects plaintiff's claim that the third hypothetical set out above is defective because it does not include a complete limitation preventing any bending by plaintiff. Heim's testimony is that he cannot bend to pick up objects, but that "if I drop something I squat to get it." (Tr. at 112). Because Heim can squat to pick up objects instead of bending, the court does not believe that the ALJ's third hypothetical is improper. The hypothetical prevents any repetitive bending activity, and Heim could perform

---

1. The record does show some inconsistent testimony as to how long plaintiff can sit, for example:

1. A report dated 8/8/90 from the doctors at plaintiff's worker's compensation carrier states that Heim says he has trouble sitting for over two hours (R. at 286).

2. On 6/19/91, Heim testified at his first hearing that he could "sit for maybe two or three hours." (R. at 75).

3. On 10/2/91, a doctor at the VA clinic stated that "for now ... no sitting for greater than 30 minutes at a time." (R. at 423).

4. On 2/19/92, Heim testified at the second hearing that he could sit for 35, 40 minutes, maybe 50—about an hours range—and that he could sit through an hour long TV show. Heim also said that the VA said he should sit for no longer than 30 minutes. (R. at 114).

Given this inconsistent testimony, however, the court notes that Dr. Quenzer, Heim's treating physician, never limited Heim to 30 minutes sitting, and on 8/8/90, Dr. Quenzer says that Heim "would be able to do a work hardening program or we may consider returning him to part-time light duty work now." (R. at 280).

2. See plaintiff's argument regarding SSR 83–12 at page 1226 of this order.

any occasional bending that was necessary by squatting.[3]

■ Finally, the court is persuaded that the third hypothetical properly includes plaintiff's non-exertional impairments. The ALJ does refer to Heim's evaluation by Dr. Joneson in his decision, and states that Joneson's findings regarding memory deficits and concentration problems were considered and evaluated by the ALJ. (Tr. at 22–23.) The third hypothetical limits plaintiff to simple, routine work and notes that plaintiff should not work at a stress level greater than five. The jobs that plaintiff is qualified for require no significant verbal skills, and plaintiff testified that he no longer had as much trouble with concentration. (Tr. at 115). For all of the foregoing reasons, the court rejects plaintiff's arguments regarding *non-exertional* impairments.[4]

**B.  Whether the ALJ properly evaluated plaintiff's subjective complaints of pain under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984).**

Plaintiff also argues that the ALJ should be reversed because he improperly discredited plaintiff's subjective complaints of pain. Plaintiff argues that there are no inconsistencies in the record that refute his claims of back pain, and that his testimony regarding problems bending, sitting, and sleeping, (Tr. at 74, 75, 423) are consistent with two MRI's which show that plaintiff has degenerative disk disease (Tr. at 284, 418). The defendant contends that the ALJ appropriately discredited plaintiff's complaints of back pain based on the medical records submitted by Dr. Quenzer, plaintiff's treating physician, who stated as early as August 1990 that plaintiff could do part-time light work. (Tr. at 280).

■ It is clear in the Eighth Circuit that an ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted); *see also Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir.1990). The ALJ must give full consideration to all evidence about subjective complaints, "including the claimant's prior work record and observations by physicians and third parties regarding: the claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Id.* If the ALJ rejects plaintiff's complaints regarding pain, the ALJ must make an express credibility determination that details his or her reasons for discrediting the testimony. *Prince*, 894 F.2d at 286.

■ After a careful consideration of the record, the court finds that the ALJ has detailed his reasons for discrediting plaintiff's testimony and has cited inconsistencies in the record to support his determination. The record shows that in the year after his accident, plaintiff failed to make any complaints of back pain to his treating physician. (Tr. at 268–271). The ALJ found that the absence of comments regarding back pain to plaintiff's treating doctor was inconsistent with a disabling degree of back related pain. (Tr. at 20). The record also indicates that plaintiff did not complain of increased pain until August of 1990, almost a year after his accident. (Tr. at 281). The ALJ notes that at that time, plaintiff was examined by Dr. Denhart who took an MRI of plaintiff's back that showed degenerative disk disease. Dr. Denhart suggested a follow up electromyogram (EMG)[5], but there is no evidence in the record that plaintiff ever received any additional treatment for any back problems from Denhart. In August of 1990, plaintiff's treating physician, Dr. Quenzer, stated that

---

**3.**  The court also again rejects plaintiff's arguments based on SSR guideline 85–15 for the reasons already mentioned on page 11 of this order.

**4.**  Plaintiff also argued that each of the hypotheticals used by the ALJ were flawed because they failed to include what effect plaintiff's physical therapy needs would have on his ability to work. The court finds that the ALJ did not err in failing

to include consideration of plaintiff's therapy needs. Dr. Quenzer, plaintiff's treating physician, states that Heim had only about 6 months of physical therapy and there is no evidence of the need for significant ongoing physical therapy.

**5.**  An electromyogram is a graphic representation of the electric currents associated with muscular action. Stedman's Medical Dictionary 497 (25th ed. 1990).

plaintiff could do part-time light work, and in June of 1991, Dr. Quenzer found plaintiff's disability at only 8%. (Tr. at 280, 349). It is well settled law that the opinion of plaintiff's treating doctor is entitled to great weight. *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir.1994); *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991). Additionally, the ALJ notes that Heim saw a Veterans Administration (VA) doctor in January of 1991 and complained of back pain, but the VA doctor found that no surgery was indicated and treatment with nonsteroidal anti-inflammatory drugs would continue. (Tr. at 315). There is also evidence of a long absence of treatment for back pain between January 1991 and August of 1991 that the ALJ found inconsistent with plaintiff's complaints. (Tr. at 19). Finally, the ALJ evaluated plaintiff's daily activities and found them inconsistent with disabling back pain. (Tr. at 23). During the day, plaintiff checks his mail, rides around the countryside looking for deer and pheasant, takes his girlfriend or her children on errands, and walks to town or around the lake. He also likes to clean guns he collects, work with wood, and last year, he started making wine. (Tr. at 123–24). Based on all of the above inconsistencies, the court will not reverse the Secretary's decision based on a misapplication of the *Polaski* standard.

**C. Whether new evidence from a substance abuse treatment center that plaintiff attended are material to plaintiff's disability claim or can be considered in this appeal.**

Finally, Heim argues that this case should be remanded because of new evidence contained in medical records from a substance abuse treatment that plaintiff underwent for thirty days at the Synergy Center in Cherokee, Iowa, in the fall of 1993. *Geigle v. Sullivan,* 961 F.2d 1395, 1397 (8th Cir.1992). These records did not exist at the time of the hearing and were not considered by the ALJ in his decision, and neither the ALJ nor the plaintiff brought up the possibility of any substance abuse problems. Defendant argues that there is no good cause for the court

to remand this case to consider the medical report from plaintiff's substance abuse program at the Synergy Clinic. Defendant states that plaintiff could have consulted a psychiatrist before the administrative hearing was closed, and that the report comes too late in time to warrant a remand.

Under 42 U.S.C. § 405(g), a court may order the Secretary to consider additional evidence, but " 'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.' " *See Chandler v. Secretary of Health and Human Services,* 722 F.2d 369, 371 (8th Cir.1983). The Synergy records indicate that plaintiff was drinking heavily within the last two years before he entered the Synergy program in September of 1993 and suffered from a depression related to his substance abuse. The application for disability benefits now on appeal before this court does not allege disability due to alcoholism. Rather, the application for benefits that the court now considers is based upon disability due to back and shoulder pain. Because the application for benefits now before the court does not allege disability due to alcoholism, the court finds that the records from the Synergy Center are not material and a remand is unwarranted.[6] In support of this conclusion, the court cites *Woolf v. Shalala,* 3 F.3d 1210, 1214 (8th Cir.1993). In *Woolf,* the Eighth Circuit denied a remand based on new evidence of plaintiff's wrist problems because plaintiff's application for benefits had not included wrist problems as a basis for plaintiff's disability. *Id.* The court notes that the Synergy records would be material to an application for disability benefits based upon alcoholism or substance abuse. Heim's second application for disability benefits did allege disability due to substance abuse, but benefits have already been awarded under this second application effective April 15, 1992.

**VI. CONCLUSION**

The court holds that the findings of the ALJ are supported by substantial evidence in

---

6. The Synergy reports also come almost 16 months after the ALJ's decision, and thus, the

timeliness of the report is questionable.

the record as a whole, and the court now affirms the decision of the Secretary and finds that plaintiff Heim was not disabled during the period from September 25, 1989, to April 15, 1992. The ALJ properly included all of plaintiff's exertional and non-exertional impairments in the hypothetical upon which it based its finding that plaintiff was not disabled. Moreover, the ALJ properly applied the *Polaski* standard in analyzing plaintiff's subjective complaints of pain, and cited inconsistencies in the record that support his findings. Additionally, the court finds that a remand is unwarranted in this case to consider the records from the Synergy Center, because the records are not material to plaintiff's disability application now before this court.

Upon the foregoing,

**IT IS HEREBY ORDERED** that the decision of the ALJ is affirmed as to the decision that there is no disability proven during the window period from September 25, 1989, to April 15, 1992.