Linda **GRAVEL**, Plaintiff,

v.

**Jo Anne B. BARNHART,**[1] **Commissioner of Social Security, Defendant.**

**No. 6:00–CV–738 (GLS).**

United States District Court, N.D. New York.

March 14, 2005.

1. Jo Anne B. Barnhart, who was sworn in as Commissioner of Social Security on November 9, 2001, has been automatically substituted as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Cynthia A. Eyler, Legal Aid Society of Northeastern, Canton, NY, for Plaintiff.

Hon. Glenn T. Suddaby, United States Attorney, Syracuse, William H. Pease, Assistant U.S. Attorney, Syracuse, NY, for Defendant.

## DECISION AND ORDER

SHARPE, District Judge.

### I. Introduction

Linda Gravel alleges that her impairments have disabled her, and challenges the denial of benefits by the Commissioner of Social Security. Having reviewed the administrative record, the court reverses the Commissioner's decision and remands for further proceedings consistent with this opinion.

### II. Procedural History

After Gravel filed for Supplemental Security Income (SSI) benefits in November 1995, her application was denied initially and on reconsideration, and a hearing was conducted by Administrative Law Judge Franklin T. Russell (ALJ). In January 1997, the ALJ issued a decision denying benefits. In July 1998, the Appeals Council granted Gravel's request for review and vacated the ALJ's decision. On remand, the ALJ was directed to obtain evidence from a vocational expert (VE) clarifying the effect of Gravel's non-exertional limitations on her occupational base. In Febru-

ary 1999, having elicited written interrogatory responses from a VE, the ALJ issued a second decision denying benefits, which became the Commissioner's final determination when the Appeals Council denied review on March 10, 2000.

On May 15, 2000, Gravel brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the Commissioner's final determination. The Commissioner filed an answer and a certified administrative transcript on August 25, 2000. Gravel filed a brief on April 27, 2001, and the Commissioner responded on August 1, 2001.

### III. *Contentions*

Gravel contends that the Commissioner's decision was erroneous as a matter of law and unsupported by substantial evidence. Specifically, she claims that (1) the ALJ erred in eliciting and relying upon VE testimony; and (2) the VE's responses did not constitute substantial evidence in support of the Commissioner's statutory burden. The Commissioner counters that substantial evidence supports the ALJ's decision that Gravel was not disabled.

### IV. *Facts*

The evidence in this case is undisputed and the court adopts the parties' factual recitations. *See Pl.'s Br., pp. 4–10, Dkt. No. 13; Def.'s Br., pp. 2–14, Dkt. No. 15.*

### V. *Discussion*

#### A. *Standard and Scope of Review*

■ When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g),[2] the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir.2004) (citation omitted). It does not determine *de novo* whether a claimant is disabled. *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir.2000). Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence. *See Pollard v. Halter,* 377 F.3d 183, 188–89 (2d Cir.2004) (citation omitted); *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). "Failure to apply the correct legal standards is grounds for reversal." *Pollard,* 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted)). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citations omitted). An ALJ must set forth the

---

**2.** The section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II. *See Barnhart v. Thomas,* 540 U.S. 20, 24–25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

crucial factors· justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides because an analysis of the substantiality of the evidence must also include that which detracts from·its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

## B. *Five–Step Disability Determination*

A plaintiff seeking Supplemental Security Income (SSI) is disabled if ·she can establish that she is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

3. In addition, a claimant's
    physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and·work experience, engage in any other kind of substantial gainful work which exists· in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether, a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied·for work.
    42 U.S.C. § 1382c(a)(3)(B).
    Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

4. The court notes that a revised version of this section came into effect in September 2003.

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ·...." 42 U.S.C. § 1382c(a)(3)(A)[3] (emphasis added).

The Commissioner uses a five-step process to evaluate SSI disability claims. *See* 20 C.F.R. § 416.920.[4] Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA). 20 C.F.R. § 416.920(b). If so, she is not considered disabled. However, if she is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment. 20 C.F.R. § 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P., Appendix 1, § 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *See Ferraris*, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's RFC[5] pre-

*See* 68 Fed. Reg. 51161, 51164 (Aug. 26, 2003). In the revised version, paragraph (e) clarifies the application of the RFC determination. New paragraphs (f) and (g), with certain modifications, correspond to the prior version's paragraphs (e) and (f), respectively. These revisions do not affect the Five–Step Disability Determination sequence. The revised version postdates and has no effect on the outcome of this case. For considerations of uniformity, and because the ALJ's decision came under the old version, the court retains the old nomenclature in its analysis.

5. "RFC is what an individual can still do despite his or her limitations. [It] is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental ·limitations or restrictions that may affect his

cludes the performance of her past relevant work. 20 C.F.R. § 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. § 416.920(f).

The claimant has the burden of showing that she cannot perform past relevant work. *See Ferraris,* 728 F.2d at 584. However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work. *See White v. Sec'y of Health & Human Servs.,* 910 F.2d 64, 65 (2d Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if she can perform other work existing in the national economy. 20 C.F.R. § 416.920(f); *see New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990).

In this case, the ALJ found that Gravel satisfied Step One because she had not worked since August 18, 1992. (Tr. 19).[6] In Step Two, the ALJ determined that she suffered from degenerative disc disease and chronic back pain in the lumbar spine. (Tr. 17, 20). In Step Three, the ALJ determined that her impairments failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17, 20). In Step Four, the ALJ determined that Gravel did not have the RFC to perform her past relevant work as a house cleaner. (Tr. 19, 20). In Step Five, the ALJ found that Gravel possessed the RFC for "essentially" light work. (Tr. 17, 20). Consequently, based on VE information about significant numbers of jobs in the national economy that a person with Gravel's RFC could do, he found Gravel not disabled[7] and denied benefits. (Tr. 19, 20).

### C. *Analysis*

#### 1. *Social Security Ruling 83–12 and Use of Vocational Expert*

■ Gravel claims that the ALJ erred in eliciting VE testimony. Relying on Social Security Ruling (SSR) 83–12, she argues that the ALJ should have found her disabled based on the Medical–Vocational Guidelines (Grids).[8] In support, she sub-

---

or her capacity to do work-related physical and mental activities … RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Social Security Ruling (SSR) 96–8p.

**6.** "(Tr.)" refers to the page of the Administrative Transcript in this case.

**7.** The ALJ made this determination using the Medical–Vocational Guidelines, Rules 202.20 and 202.13 of Table 2, Appendix 2, Subpart P, Regulations No. 4, accounting for Gravel's falling under two different age categories.

**8.** Specifically, she relies on Rule 201.12, which directs a finding of "Disabled" where a claimant has the RFC for sedentary work, is "closely approaching advanced age" (age 50–54), possesses a high school education or more which does not allow direct entry into skilled work, and has previous unskilled work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.12; *see* 20 C.F.R. § 416.963. Gravel also contends that Grid Rule 201.12 should apply as of the date she filed her claim at age 49. Her contention that hers is a borderline situation is misplaced. As provided by the Regulations, the Commissioner will not mechanically apply the age categories in borderline cases where the claimant is *within a few days to a few months* from reaching an older age category. 20 C.F.R. § 416.963(b) (emphasis added). However, Gravel filed her claim when she was 11 months away from reaching "closely approaching advanced age," which period is not considered "borderline." *Compare Lambert v. Chater,* 96 F.3d 469, 470 (10th Cir.1996) (seven months not borderline); *Russell v. Bowen,* 856 F.2d 81, 84 (9th Cir.1988) (seven months not borderline); *Barrett v. Apfel,* 40 F.Supp.2d 31, 39 (D.Mass.1999) (nine months not borderline) *with Kane v. Heckler,* 776 F.2d

mits that she had exertional limitations[9] that only satisfy the RFC requirement for sedentary work, which, combined with her age and other vocational factors, make her disabled. Gravel's rationale is misplaced.

In this case, the ALJ found that Gravel had the following RFC: she could sit for four hours, stand for two hours, and walk for two hours in an eight-hour day. She could lift and carry up to ten pounds frequently and twenty pounds occasionally, and could use her hands for repetitive actions such as grasping and fine manipulation. Finally, Gravel was to avoid bending. (Tr. 17). The ALJ gave controlling weight to and based his RFC finding on a functional capacity assessment from Dr. DuMond, Gravel's treating physician.[10]

Gravel argues that under SSR 83–12, her RFC falls between two exertional levels directing opposite conclusions under the Grids. In relevant part, SSR 83–12 provides:

2. If the exertional level falls between two rules which direct opposite conclusions, i.e. "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capability is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the re-

---

1130, 1132–33 (3d Cir.1985) (forty-eight days borderline); *Davis v. Shalala,* 883 F.Supp. 828 (E.D.N.Y.1995) (three months borderline); *Hill v. Sullivan,* 769 F.Supp. 467, 471 (W.D.N.Y.1991) (three months borderline). One court has noted an "Appeals Council Interpretation" defining "borderline" as six months. *Russell v. Comm'r of Soc. Sec.,* 20 F.Supp.2d 1133, 1134–35 (W.D.Mich.1998). Her disability status at age 49 with a sedentary work RFC would need to be determined under 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 201.00(h). The above notwithstanding, her age category would be immaterial with an RFC for light work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rules 202.13, 202.20.

9. Exertional limitations are "limitations and restrictions imposed by ... impairment(s) and related symptoms, such as pain, [that] affect only [the] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 416.969a(b); *see Butts,* 388 F.3d at 381 n. 1.

10. Treating physician opinions are given controlling weight if based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 416.927(d)(2); *see Schaal,* 134 F.3d at 503–04. Here, the ALJ determined that the doctor's opinion was entitled to deference because it was "consistent with the very limited objective clinical and laboratory findings in evidence and [because] it appear[ed] that [the doctor was] the most familiar with [Gravel's] impairment." (Tr. 17). In his assessment, Dr. DuMond also indicated that Gravel could sit for four hours "with breaks," was limited to occasional squatting, crawling, and climbing, and was able to push and pull without limitation. (Tr. 186). His opinion was solely based on Gravel's "low back pain—presumably due to degenerative disc disease." (Tr. 187). He also opined that Gravel could "probably not tolerate 6 hours of standing or walking in an 8–hour workday ... should avoid bending, and any lifting of objects should be within the [stated] RFC limits ...." (Tr. 187).

maining vocational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases.

SSR 83–12, Adjudicative Guidance. Gravel observes[11] that were she found capable of performing light work, Rule 202.13 would direct a finding of "not disabled." Conversely, Rule 201.12 would direct a finding of "disabled" if Gravel only had the RFC for sedentary work. She contends that her exertional limitations do not fall "somewhere in the middle" because her impairments significantly reduce her RFC for light work, and instead place her very close to sedentary work. Therefore, she claims that she falls into the sedentary exertional category, and should have been considered "disabled" under SSR 83–12 (paragraph 2.b. above). Gravel misinterprets the rationale of SSR 83–12.

"SSR 83–12 does not mandate a finding of 'disabled.'" *Moore v. Apfel,* 216 F.3d 864, 871 (9th Cir.2000). It does not require the ALJ to determine whether a claimant's occupational base is more closely related to light or sedentary work capacity. Similarly, the Ruling cannot be interpreted to suggest that a finding of inability to do the full range of light work requires a conclusion that a person is capable only of sedentary work.[12] Instead, it states that a significantly reduced exertional capacity *"could indicate* little more than the occupational base for the lower rule and *could justify* a finding of 'Disabled.'" SSR 83–12 (emphases added). As such, this Ruling merely provides guidance to the ALJ on how to proceed. *See*

*Hall v. Barnhart,* 2004 WL 632723, at *5 (E.D.Pa. Jan. 14, 2004).

The purpose of SSR 83–12 is to clarify the use of the Grids as a framework for disability determinations when an individual's exertional RFC does not fall within any of the categories of work as defined in sections 404.1567 and 416.967 of the Regulations. When an individual's RFC is between two categories, "the occupational base is affected and *may or may not represent* a significant number of jobs in terms of the rules directing a conclusion as to disability." SSR 83–12, Policy Statement (emphasis added). Moreover, it instructs the ALJ to "consider the extent of any erosion of the occupational base and a[ss]ess its significance," and, in complex cases "[w]here the extent of the erosion of the occupational base is not clear ... to consult a vocational [expert]." SSR 83–12. The Ruling further provides that the VE can assess the effect of any limitation on a given range of work and then "advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." Thus, a fair reading of SSR 83–12 indicates that an ALJ can properly find a claimant capable of performing a limited range of work in a given exertional category and then elicit VE testimony to determine whether that claimant is disabled.

In addition, the Regulations recognize that there are instances when a claimant's

---

**11.** This is based on Gravel's rationale that she falls within the "closely approaching advanced age" category. She does not address the potential outcomes under the "younger individual" category. *See supra* note 8.

**12.** Similarly, SSR 96–8p advises that because RFC represents *the most* an individual can do, it "must not be expressed in terms of the lowest exertional level" that a claimant would satisfy, as it would "concede lesser functional abilities that [she] actually possesses ...."

RFC will not fit precisely within a given exertional category, in which case the Grids will not be determinative of a claimant's ability to perform substantial work. As explained in 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a), "[w]here the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled ... Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."[13]

This case fits within the above framework. Gravel had an RFC for less than the full range of light work, but this did not mean that she was limited to sedentary work. She could perform the lifting requirements of light work, but could not stand, walk, or sit for as long as the definition of that category requires.[14] Conversely, Gravel's RFC exceeded the lifting, standing and walking requirements of sedentary work, but was below the sitting requirement[15] for that category.[16] Thus, Gravel fell between the two RFC levels, one of which would direct a finding of disability (sedentary) and the other a finding of non-disability (light). Since her exertional profile did not precisely fit into any of the specific categories, use of the Grids in making a disability determination would have been improper. Therefore, the ALJ did exactly what he was supposed to do under SSR 83–12: he relied on a VE.

**13.** The same rationale appears in section 200.00(d), which provides, in relevant part:

The correct disability decision ... is found by then locating the individual's specific vocational profile. If an individual's specific profile is not listed within this appendix 2, a conclusion of disabled or not disabled is not directed. Thus, for example, an individual's ability to engage in substantial gainful work where his or her residual capacity falls between the ranges of work indicated in the rules (e.g. the individual who can perform more than light but less than medium work), is decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this appendix 2.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d); *see* 20 C.F.R. § 416.969.

**14.** Light work requires an ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, [the administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b). In addition, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." SSR 83–10.

**15.** Gravel's assertion that sedentary work "most closely" fits her RFC because she was limited to less than the sitting requirement of sedentary work does not lead to a different result under the above rationale.

**16.** Sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. Although sedentary by definition involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). Sitting generally totals approximately six hours of an eight-hour work day. SSR 83–10.

Furthermore, under SSR 83–14, where a determination of disability cannot be made based solely on the claimant's exertional RFC, a VE must be consulted in assessing the effect of her non-exertional limitations.[17] It is well settled that "exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical [capacity]," particularly where her exertional limitations are combined with significant non-exertional limitations that further limit her occupational base. *Rosa v. Callahan,* 168 F.3d 72, 78 (2d Cir.1999) (citation omitted). "In these circumstances, the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" *Id.* (quoting *Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir.1986)). In this case, the ALJ's use of a VE was also appropriate in light of Gravel's inability to bend, which constitutes a significant postural, non-exertional limitation on her RFC that could further reduce her occupational base. *See* 20 C.F.R. § 416.969a(c)(vi).[18]

Accordingly, the ALJ was not required to find that Gravel was only capable of sedentary work and did not err in eliciting VE testimony in making his disability determination.

### 2. Sufficiency of Vocational Expert's Testimony

■ Gravel also claims that the Commissioner failed to meet her burden at the fifth step of the sequential analysis. She contends that based on her RFC, she is unable to perform the jobs identified by the VE absent evidence that they require the ability to perform less than the full range of light work. Gravel is correct that these occupations, as identified by the VE, do not meet her specific RFC. Accordingly, they do not provide substantial support for the ALJ's determination at step five.

A VE may testify, based on a hypothetical question, to the existence and numbers of jobs in the national economy that a claimant with a particular RFC can perform. 20 C.F.R. § 416.966; *see Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir. 1983); *Rautio v. Bowen,* 862 F.2d 176, 180 (8th Cir.1988). In this case, as directed by the Appeals Council's order, the ALJ asked the VE to list and describe specific jobs in the regional and/or national economy that a person with Gravel's age, education, skills, and RFC could perform. Specifically, the ALJ instructed the VE to assume an individual: 51 years old with high school education, having taken courses in typing, office machines and bookkeeping with past experience as a house cleaner involving lifting 50 pounds and working entirely on her feet; with low back pain and discomfort occasionally radiating into the left leg primarily upon increased activity; with ulcers and duodenal diverticulum controlled by diet (and having no impact on the claimant's ability to work); able to sit for 4 hours, stand for 2 hours, and walk for 2 hours in an 8-hour day, lift 10 pounds frequently and 20

**17.** Non-exertional limitations are "limitations and restrictions imposed by … impairment(s) and related symptoms, such as pain, [that] affect only [the] ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 416.969a(c). These include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 416.969a(c)(vi); *see Butts,* 388 F.3d at 381 n. 1.

**18.** Moreover, the presence of non-exertional limitations precludes use of SSR 83–12, which only applies to cases involving solely exertional limitations. *See Heim v. Shalala,* 895 F.Supp. 1222, 1227 (N.D.Iowa 1995).

pounds occasionally; able to use her hands for repetitive action such as grasping and fine manipulation; who should avoid bending. In addition, the VE was asked whether her response would change if the hypothetical individual were 49 years old. (Tr. 208–09).[19] More importantly, the VE was asked to explain how each job was performed, and to identify "all exertional and non-exertional requirements including ... sitting, standing, walking, climbing, stooping, crouching, kneeling, crawling, reaching, pushing, pulling, lifting, use of the hands, production demands, quotas and sustained work requirements, [and] environmental concerns ...." (Tr. 209).

The VE identified three unskilled jobs in the light work category[20] available in substantial numbers in the regional and national economies.[21] However, in response to the ALJ's request to specify the exertional and non-exertional requirements associated with these jobs, the VE cited to their narrative descriptions in the DOT and its definitions supplement. She did not elaborate on their specific requirements. As Gravel points out, the DOT lists each of these occupations as requiring the ability to do a full range of light work, while the ALJ's hypothetical was based on an exertional capacity for less than light work. The DOT definitions also do not contain information about the specific limitations identified by the ALJ. Consequently, because there is no testimony from the VE regarding the jobs' occupational requirements, the conclusory reference to the DOT's light exertional level is inconsistent with Gravel's RFC. Therefore, the jobs cited by the VE do not constitute substantial evidence in support of the ALJ's determination. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984); *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir.1999); *cf. Johnson v. Shalala*, 60 F.3d 1428, 1435 & n. 7 (9th Cir.1995).[22]

---

19. The VE was also asked to provide the job title and Dictionary of Occupational Titles (DOT) code, exertional level, numbers, and skill level for each job, and to explain how she arrived at the numbers stated.

20. (1) Ticket Taker, DOT 344.677–010 (this appears to be a typographical error; the correct DOT code for this job is 344.667–010); (2) Parking Lot Attendant, DOT 915.473–010; and (3) Mail Clerk, DOT 209.687–026.

21. Gravel does not contest this aspect of the VE's testimony.

22. This case does not directly raise an issue of conflict between the VE's testimony and the DOT. *See Carey v. Apfel*, 230 F.3d 131, 144–47 (5th Cir.2000) (delineating then-existing conflict on this issue and summarizing approaches adopted by different Circuit Courts of Appeals); *see also Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir.2002). Instead, it presents a situation where the VE's testimony is deficient not because it contradicts, but is instead unexplained and based upon the DOT definitions. The VE's testimony would have conflicted with the DOT if the VE had gone the necessary step further and elaborated on the specific requirements of the jobs she identified vis-a-vis Gravel's RFC. In this latter situation, the ALJ could have properly relied on the VE's testimony if it were rationally explained and supported by the record. *See Mimms*, 750 F.2d at 186; *Carey*, 230 F.3d at 146–47.

The court also notes that SSR 00–4p, enacted after the ALJ rendered his decision and therefore inapplicable here, "squarely addresses how this situation should be handled." *Burns*, 312 F.3d at 127. The Ruling requires the ALJ to ask the VE whether any possible conflict exists between the VE's testimony and the DOT, and, if the testimony does appear to conflict with the DOT, to "elicit a reasonable explanation for the apparent conflict." As such, it is consistent with the Second Circuit's prior requirement that a discrepancy between the VE's testimony and the DOT be explained and supported by substantial evidence of record. *See Mimms*, 750 F.2d at 186; *see also Jasinski v. Barnhart*, 341 F.3d 182, 185–86 (2d Cir.2003) (clarifying *Mimms* rationale).

The Commissioner argues that the VE's responses provided sufficient support for the ALJ's determination, and submits that the VE duly considered all the limitations listed by the ALJ. This argument misses the point. It would have been reasonable for this court to conclude that the jobs listed by the VE satisfied Gravel's RFC if she had elaborated on the specific requirements for each job. However, this is not the case here, simply because the definitional reference relied on by the VE contemplates functional requirements that ex-ceed those associated with Gravel's RFC. As such, the VE's testimony does not provide a sufficient basis for the ALJ's determination that Gravel can perform these jobs.[23]

Therefore, on the present record, and absent further clarification, the jobs stated by the VE are irreconcilable with the RFC accepted by the ALJ, and do not constitute substantial evidence in support of his decision. Accordingly, the Commissioner has failed to meet her statutory burden, and the case must be remanded[24] for further

**23.** The Commissioner also points out, in several footnotes to her brief, that Gravel's representative was afforded the opportunity to object to both the ALJ's interrogatories and the VE's response. To the extent this argument seeks to imply that Gravel had a duty to cross-examine the VE or rebut his responses, it is misplaced. Because of the non-adversarial nature of Social Security proceedings, an ALJ has the duty to affirmatively develop the record and the arguments "both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *see also Butts*, 388 F.3d at 386 (citation omitted). It is well-settled that an ALJ is not relieved of this obligation even where the claimant is represented by counsel. See *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*, 134 F.3d at 505; *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982). As the Tenth Circuit has explained:

> To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert. To do so would contravene basic principles of social security law, [because] [i]t is not [the claimant's] burden to prove [sh]e cannot work at any level lower than h[er] past relevant work; it is the [agency's] burden to prove that [sh]e can ... To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant.

*Haddock*, 196 F.3d at 1090 (second, third and fifth alterations in original, internal quotation

marks and citations omitted). It was therefore the ALJ's duty to ensure that his hypothetical properly reflected Gravel's RFC and to require further explanation from the VE if her responses were not adequately substantiated. Here, the ALJ should have elicited additional VE testimony that would support his findings, and his failure to do so constituted error on his part.

**24.** The court does not address Gravel's argument that the frequent reaching required by each job identified conflicts with her claimed pain and limited range of motion in her left arm and shoulder. It must, however, *sua sponte* note that additional deficiencies in the ALJ's decision warrant remand. First, the ALJ omits any discussion of Gravel's subjective complaints of pain and alleged resulting limitations. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999). The Commissioner submits that the ALJ considered those subjective complaints, and cites to the ALJ's first decision. That decision, however, was vacated by the Appeals Council and does not constitute the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 416.1400(a), 416.1455, 416.1481; *see also Sims*, 530 U.S. at 106–07, 120 S.Ct. 2080. Therefore, the failure of the ALJ to consider Gravel's subjective complaints in his second decision was error.

development of the record with respect to the jobs Gravel can perform.

## D. *Reversal and Remand*

Gravel argues that the Commissioner's decision should be reversed and remanded solely for the calculation of benefits. This court disagrees.

■ Under sentence four of 42 U.S.C. § 405(g), the court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. *Butts,* 388 F.3d at 385. Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. *See Butts,* 388 F.3d at 385; *Rosa,* 168 F.3d at 82–83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. *Rosa,* 168 F.3d at 83; *Parker,* 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 644 (2d Cir.1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of

determining disability). However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. *See Bush v. Shalala,* 94 F.3d 40, 46 (2d Cir.1996) (citation omitted).

Gravel argues that the record contains persuasive proof that she was disabled. She claims that a combination of lumbar radiculopathy, pain in her left shoulder and arm, gastritis, and chronic obstructive pulmonary disease have totally disabled her. However, the requisite persuasive proof of disability is not readily apparent to this court. The ALJ as the proper fact finder may reach a contrary conclusion on this record. In this regard, Gravel's medical records show test results indicative of mild degenerative or osteoarthritic changes and negative or mild physical examination findings. Likewise, both her treating and examining physicians have indicated that Gravel was capable of engaging in different levels of work activity. Moreover, there is limited evidence, objective or opinion-based, that some of Gravel's conditions are related to her claimed disability. Considered together with Gravel's testimony about daily activities and subjective complaints, the record may well provide substantial evidence to support a determination that Gravel was not disabled. Accordingly, this case must be remanded for further proceedings.

## VI. *Conclusion*

After careful review of the entire record, and for the reasons stated, the court REVERSES the Commissioner's final deci-

---

Second, the ALJ's hypothetical appears to ignore the full extent of Gravel's limitations. A hypothetical question that does not reflect the full extent of a claimant's limitations is not a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health & Human Servs.,* 734 F.2d 930, 936 (2d Cir. 1984). Here, although he decided to give controlling weight to Gravel's treating physician's opinion, the ALJ failed to include in his

hypothetical a significant limitation noted by the doctor: that Gravel was only able to sit for four hours *with breaks*. This would require her to alternate between sitting and standing and represents a significant additional limitation that should have been considered. Thus, the ALJ's failure to include this limitation was error, and made the hypothetical an inadequate basis for the VE's testimony.

sion under sentence·four of 42 U.S.C. § 405(g) and REMANDS the case for further proceedings consistent with this decision. Under sentence four of 42 U.S.C. § 405(g), entry of judgment in this case will terminate the civil action and divest the court of jurisdiction. *See Shalala v. Schaefer*, 509 U.S. 292, 299, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (citation omitted).

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's decision denying SSI benefits is **RE-VERSED;** it is further

**ORDERED** that this case is **REMAND-ED** to the Commissioner for further proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**